Argued and submitted January 5, decision of Court of Appeals affirmed; judgment of
conviction affirmed; case remanded to circuit court for resentencing March 18, 1993

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## DENNIS JOHN DAVIS,
*Respondent on Review.*

(CC 90-03-31793; CA A68411; SC S39509)

847 P2d 834

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the petition for petitioner on review. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Jesse Wm. Barton, Deputy Public Defender, Salem, argued the cause for respondent on review. With him on the response was Sally L. Avera, Public Defender, Salem.

GILLETTE, J.

## GILLETTE, J.

In this felony sentencing guidelines case, the issue is whether OAR 253-08-007(3), which limits the "incarceration term" that a convicted offender may serve under a "departure" sentence that has been imposed on the offender in the form of a consecutive sentence, applies to the entire indeterminate term of a sentence under the dangerous offender statutes, ORS 161.725 to 161.737. We hold that it does.

To understand the issue in this case, one must have, at the very least, a basic understanding of what the Oregon felony sentencing guidelines are and how they operate. Because this case marks the first significant excursion by this court into the sentencing guidelines,[1] we think it appropriate, before delving into the specific controversy presented in this particular case, to set forth a brief introduction to the guidelines.[2]

In 1987, the Oregon legislature authorized the Oregon Criminal Justice Council[3] to develop a set of mandatory felony sentencing guidelines that would establish presumptive sentences for all felonies, subject to deviation in appropriate cases. Or Laws 1987, ch 619. At the same time, the legislature created the State Sentencing Guidelines Board[4] (the Board) to serve as the administrative body that would adopt the guidelines in the form of administrative rules. *Id.* §§ 3-4. In May 1989, the Board completed that task and, in July,

---

[1] In *State v. Adams*, 315 Or 359, 847 P2d 397 (1993), our only other case touching on this subject, we were concerned with the scope of direct appellate review of a guidelines sentence imposed pursuant to an agreement between the defendant and the state, not with the way the guidelines worked.

[2] For a comprehensive treatment of the history and operation of the Oregon felony sentencing guidelines, see Kirkpatrick, *Mandatory Felony Sentencing Guidelines: The Oregon Model*, 25 UC Davis L Rev 695 (1992). See also Oregon Criminal Justice Council, Oregon Sentencing Guidelines Implementation Manual (1989 & Supp 1992) (hereafter Guidelines Manual).

[3] The Oregon Criminal Justice Council is a state agency composed of individuals drawn from the legislative, executive and judicial branches of the state government, as well as from the general public. *See* ORS 137.653 (describing Council membership). The legislature has assigned the Council various duties relating to the criminal justice system. *See* ORS 137.655, 137.657, 137.659 (setting out duties).

[4] The State Sentencing Guidelines Board consists of those members of the Oregon Criminal Justice Council who do not serve in the legislative or judicial branches of the state government. *See* ORS 137.663(2) (describing Board membership).

the legislature expressly approved the guidelines.[5] Or Laws 1989, ch 790, § 87. The guidelines took effect on November 1, 1989.

■    The centerpiece of the sentencing guidelines is the 99-block Sentencing Guidelines Grid. *See* OAR ch 253, app 1 (setting out the grid). A "Crime Seriousness Scale" serves as the vertical axis of the grid. Most felonies fall within one of the 11 categories on the Crime Seriousness Scale.[6] A "Criminal History Scale" serves as the horizontal axis of the grid. The Criminal History Scale is made up of nine categories, ranging from "minor misdemeanor or no criminal record" to "multiple (3+) felony person offender." The appropriate sentence for a given felony conviction is determined by (1) locating the appropriate category for the crime of conviction on the Crime Seriousness Scale; (2) locating the appropriate category for the convicted offender on the Criminal History Scale; and (3) locating the grid block where the two categories intersect. Each grid block contains what is called a "presumptive sentence"[7] that, in cases like the present one, is expressed in a range of months of imprisonment.[8] OAR 253-05-001.

■■    A sentencing judge must impose a presumptive sentence within the range established by the appropriate grid block unless there are "substantial and compelling" reasons in aggravation or mitigation, in which case the judge may depart from the presumptive range. OAR 253-08-001,

---

[5] The legislature also provided that future amendments to the guidelines "shall not become effective unless approved by the Legislative Assembly by statute." Or Laws 1989, ch 790, § 94a.

[6] Some felonies were intentionally omitted from the Crime Seriousness Scale, and special rules govern their ranking. *See, e.g.*, OAR 253-04-003 (governing aggravated murder); OAR 253-04-005 (governing attempts and solicitations); OAR 253-04-004 (governing other unranked offenses).

[7] The guidelines define "presumptive sentence" as "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime seriousness ranking of the current crime of conviction and the offender's criminal history." OAR 253-03-001(16).

[8] Forty-six of the ninety-nine grid blocks in the Sentencing Guidelines Grid fall below what is called the "dispositional line." For a conviction falling in one of those grid blocks, the presumptive sentence is a term of probation, OAR 253-05-007(1). The numbers in the grid block represent "the number of custody units that *may* be imposed" and "the maximum number of custody units that *may* be imposed as a jail term." OAR 253-05-007(2) (emphasis supplied). The crimes in the present case fall within grid blocks *above* the dispositional line. The numbers in those grid blocks represent months of imprisonment. OAR 253-05-001.

253-08-002. If the judge chooses to impose a sentence of greater or lesser length than that allowed by the presumptive range, the sentence is called a "durational departure."[9] Such a sentence is subject to various limiting rules, one of which, OAR 253-08-007(3), is at issue in this case.

With that basic introduction to the sentencing guidelines in mind, we proceed to the facts of the present case. Defendant was convicted on two counts of first degree rape, ORS 163.375, six counts of first degree sodomy, ORS 163.405, and one count of first degree kidnapping, ORS 163.235. After designating count one (rape) as the "primary offense,"[10] the sentencing judge determined that the appropriate grid block for that crime was 10-E, which provides for a presumptive sentence of imprisonment for 81 to 90 months. The judge departed from the presumptive sentence, however, and imposed a durational departure of 180 months of imprisonment. On count five (sodomy), the judge imposed a durational departure of 120 months of imprisonment, to be served consecutively to the sentence on count one. On each remaining count, the judge sentenced defendant to an indeterminate term of 30 years (360 months) of imprisonment as a dangerous offender, pursuant to ORS 161.725.[11] The seven

---

[9] A "departure" is "a sentence, except an optional probationary sentence, which is inconsistent with the presumptive sentence for an offender." OAR 253-03-001(5). A "durational departure" is "a sentence which is inconsistent with the presumptive sentence as to term of incarceration, term of post-prison supervision, term of probation or number of custody units which may be imposed as a condition of probation." OAR 253-03-001(8).

[10] Under the sentencing guidelines, the "primary offense" is "the offense of conviction with the highest crime seriousness ranking. If more than one offense of conviction is classified in the same crime category, the sentencing judge shall designate which offense is the primary offense." OAR 253-03-001(17). In this case, all nine convictions were classified in crime category 10 on the Crime Seriousness Scale.

[11] ORS 161.725 provides, in part:

"Subject to the provisions of ORS 161.737, the maximum term of an indeterminate sentence of imprisonment for a dangerous offender is 30 years, if the court finds that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and if it further finds, as provided in ORS 161.735, that * * *:

"(1) The defendant is being sentenced for a Class A felony, and the court finds that the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another."

There is no issue in this case as to whether defendant fits the criteria set out in ORS 161.725(1).

dangerous offender sentences were to be served concurrently with each other, but consecutively to the sentences on counts one and five. The judge set the determinate part of the dangerous offender sentences at 60 months. ORS 167.737(2) states that, "[w]hen the [dangerous offender] sentence is imposed, the sentencing judge shall indicate on the record * * * the presumptive sentence that would have been imposed if the court had not imposed the [dangerous offender] sentence * * * as a departure." This presumptive sentence serves as the determinate part of the dangerous offender sentence — *i.e.*, the part that *must* be served. *See* ORS 144.232(1) (a person sentenced as a dangerous offender "is eligible for release to post-prison supervision after having served the presumptive sentence established under ORS 161.737"). Thus, under the sentences as the judge imposed them, defendant was subject to a minimum term of 360 months of incarceration,[12] with a maximum term of 660 months.

■    Defendant appealed his sentences, arguing that, under OAR 253-08-007 and 253-12-020, set out *infra*, his maximum term of imprisonment — including the entire indeterminate term of the dangerous offender sentences — could not exceed four times the presumptive sentence for the primary offense, or 360 months. The state argued that this limitation — the so-called "400 percent rule" — applies only to the determinate part of the dangerous offender sentences, not to the indeterminate part. The Court of Appeals agreed with defendant and remanded for resentencing. *State v. Davis*, 113 Or App 118, 830 P2d 620 (1992). We affirm the decision of the Court of Appeals.

■    We deal first with a preliminary issue. At oral argument before this court, the state contended that a dangerous offender sentence is not subject to the sentencing guidelines at all, because ORS 161.737(1), one of the dangerous offender statutes, states that "[a] sentence imposed under ORS 161.725 and 161.735 [*i.e.*, a dangerous offender sentence] for felonies committed on or after November 1, 1989, shall constitute a *departure from* the sentencing guidelines."

---

[12] Under ORS 421.121, defendant would still be eligible for a reduction in this "minimum" prison term for "appropriate institutional behavior" or for participation in a "functional literacy program." However, that reduction could not exceed 20 percent of defendant's total term of incarceration. ORS 421.121(2).

(Emphasis supplied.) According to the state, because a dangerous offender sentence is a "departure from" the guidelines, the guidelines have no bearing on dangerous offender sentencing. We reject that argument for the following reasons.

First, the phrase "departure from," on which the state relies, must be viewed within its context. The statute in which that phrase appears, ORS 161.737, was enacted as part of Oregon Laws 1989, chapter 790, the comprehensive legislation implementing the sentencing guidelines. Or Laws 1989, ch 790, § 77. In that same legislation, the legislature expressly approved the guidelines. *Id.* § 87. Thus, the guidelines provide a context in which the statutory provisions in Oregon Laws 1989, chapter 790, are to be read. The guidelines define "departure" to mean "a sentence, except an optional probationary sentence, which is inconsistent with the presumptive sentence for an offender." OAR 253-03-001(5). It follows that, when viewed in the light of the guidelines' definition of the word "departure," the phrase on which the state relies means only that a dangerous offender sentence is a departure sentence *within* the guidelines, rather than a sentence that falls *outside* the guidelines.

Other wording in ORS 161.737 itself supports this conclusion. The sentence following the one on which the state relies provides that "[t]he findings made to classify the defendant as a dangerous offender under ORS 161.725 and 161.735 shall constitute substantial and compelling reasons *to depart from the presumptive sentence* as provided by the rules of the State Sentencing Guidelines Board." ORS 161.737(1) (emphasis supplied). This wording indicates that the phrase in the preceding sentence, "a departure from the sentencing guidelines," was intended to mean *a departure from the presumptive sentence established by the guidelines* — *i.e.,* a departure sentence — not a departure from the entire guidelines system. We reject the state's argument and hold that a dangerous offender sentence is a departure sentence within the sentencing guidelines.[13]

---

[13] The Court of Appeals has reached the same conclusion. *See State v. Serhienko,* 111 Or App 604, 606, 826 P2d 114 (1992) ("Under the sentencing guidelines, a dangerous offender sentence is a departure sentence.").

The state's central argument may be stated as follows: Even if a dangerous offender sentence is a departure sentence within the guidelines, and thus subject to the limitation in OAR 253-08-007(3) if the sentence is to be served consecutively to other sentences, that limitation applies only to the determinate portion of the dangerous offender sentence, rather than to the entire indeterminate term of the sentence. Consideration of this argument requires us to explore in detail the rules governing consecutive sentences under the sentencing guidelines.

■ We note at the outset that consecutive sentences *are* governed by the sentencing guidelines. ORS 137.121 provides that, "[n]otwithstanding any other provision of law, but subject to ORS 161.605, the maximum consecutive sentences which may be imposed for felonies committed on or after November 1, 1989, whether as terms of imprisonment, probation, or both, shall be as provided by rules of the State Sentencing Guidelines Board."

■ Two rules, OAR 253-08-007 and 253-12-020, establish the limits for consecutive sentences under the guidelines. The latter rule, OAR 253-12-020, establishes the limit when no departure sentence is imposed. That rule states, in part:

"(1)   When the sentencing judge imposes multiple sentences consecutively, the consecutive sentences shall consist of an incarceration term and a supervision term.

"(2)(a)   Subject to the provisions of subsection (b) of this section, the presumptive incarceration term of the consecutive sentences is the sum of:

"(A)   The presumptive incarceration term for the primary offense, as defined in OAR 253-03-001(17); and

"(B)   Up to the maximum incarceration term indicated in the Criminal History I Column for each additional offense imposed consecutively.

"(b)   The total incarceration term of the consecutive sentences, including the incarceration term for the primary offense, shall not exceed twice the maximum presumptive incarceration term of the primary sentence except by departure as provided by OAR 253-08-007."

OAR 253-12-020(2)(b), *supra,* establishes the so-called "200 percent rule." Under that rule, no matter how many convictions arise out of a single case, if any of the sentences are imposed to run consecutively, the total incarceration term for all of the convictions combined may not exceed twice the maximum presumptive incarceration term for the primary offense, except by departure. For example, in this case, the maximum presumptive incarceration term for defendant's primary offense was 90 months. Under the "200 percent rule," then, defendant's total incarceration term for all nine convictions could not exceed 180 months, except by departure.

When one or more departure sentences are imposed, OAR 253-08-007 provides the limit for the incarceration term of the consecutive sentences. That rule states:

"(1)   The court may depart from the presumptive limits established by OAR 253-12-020 for consecutive sentences only if the judge finds substantial and compelling reasons to impose a departure sentence for any individual offense being sentenced consecutively.

"(2)   Except as provided by section (3) of this rule, the sentencing judge shall comply with the provisions of OAR 253-08-001 to 253-08-006 when a departure sentence is imposed for an offense sentenced consecutively.

"(3)   When a departure sentence is imposed for any individual offense sentenced consecutively, the incarceration term of that departure sentence shall not exceed twice the maximum presumptive incarceration term that may be imposed for that offense as provided in OAR 253-12-020(2)(a)."

OAR 253-08-007(3), when read in conjunction with OAR 253-12-020(2), provides the so-called "400 percent rule." While the language of the rule itself is not particularly clear, the official commentary of the State Sentencing Guidelines Board clarifies the rule's intended operation:

"The provisions of this special departure rule must be applied in the context of Section (2) of OAR 253-12-020 which provides the calculus for setting the incarceration term of consecutive sentences. * * *

"* * * * *

"The proper application of this rule will require the sentencing judge to calculate the incarceration term of the consecutive sentences as if no departure would be imposed. Once an incarceration term has been set for each of the crimes of conviction, the sentencing judge may establish a departure sentence for any one or more of the offenses."

Oregon Criminal Justice Council, Oregon Sentencing Guidelines Implementation Manual 141 (1989) (hereafter Guidelines Manual).[14]

■ ■    This commentary, along with an accompanying example, demonstrates how the rule operates. First, the sentencing judge must calculate the presumptive incarceration term for each conviction without departure, applying OAR 253-12-020(2). These presumptive incarceration terms are limited by the 200 percent rule, *i.e.*, they cannot exceed 200 percent of the presumptive incarceration term for the primary offense. After calculating those terms, the judge may impose a departure sentence on any or all of the individual convictions.[15] Under OAR 253-08-007(3), however, the incarceration term of each departure sentence may not exceed twice the presumptive incarceration term already determined for that offense under OAR 253-12-020(2). Because these presumptive incarceration terms will have been limited already by operation of the 200 percent rule, the maximum incarceration term that may be imposed for all the consecutive sentences together by departure cannot exceed four times the maximum presumptive incarceration term of the primary offense. Or, as stated by the commentary to OAR 253-08-007, "the maximum sentence which could be imposed for a series of consecutive sentences in which a maximum durational departure is justified for each of the sentences

---

[14] Authored by the Oregon Criminal Justice Council, the Oregon Sentencing Guidelines Implementation Manual is a "training tool" and "reference manual" that "describes for criminal justice professionals the proper application of the guidelines." Guidelines Manual, *supra*, at 1. The Guidelines Manual also contains the State Sentencing Guidelines Board's official commentary to each of the rules comprising the guidelines.

[15] OAR 253-08-007(1) makes clear that a departure sentence may be imposed "only if the judge finds substantial and compelling reasons to impose a departure sentence *for any individual offense* being sentenced consecutively." (Emphasis supplied.) The commentary to the rule adds that "[t]he grounds for departure should specifically apply to the offense for which a departure sentence is to be imposed." Guidelines Manual, *supra*, at 141.

could be up to 400% of the primary sentence, but could never exceed 400%."[16] Guidelines Manual, *supra*, at 142.

In this case, as noted above, the maximum presumptive incarceration term of defendant's primary offense was 90 months. Under the 400 percent rule, then, in no event could defendant's maximum incarceration term exceed 360 months.

Because OAR 253-08-007(3) limits "the incarceration term" of a departure sentence,[17] the state's argument in this case rests on the meaning of that phrase. "Incarceration term" is not defined in the sentencing guidelines or in the Guidelines Manual. The state argues that, in the context of a dangerous offender sentence, the "incarceration term" is the determinate, or minimum, part of that sentence, rather than the entire indeterminate sentence itself. According to the state, because the rules on consecutive sentences were drafted to apply to the determinate sentences provided by the guidelines, those rules can apply only to the determinate part of a dangerous offender sentence.

Under the present statutory scheme, a dangerous offender sentence has two parts: a determinate part and an indeterminate part. When imposing a dangerous offender

---

[16] Although 400 percent is the absolute maximum in any case, in some cases the maximum incarceration term may be *less* than that amount. For example, assume that the defendant was convicted of two counts of rape in the first degree, that the designated primary offense has a grid block of 10-E, and that the judge imposes a presumptive *sentence of 90 months. If the judge imposes a consecutive sentence on the second conviction, OAR 253-12-020(2)(a)(B) provides for a sentence of "[u]p to the maximum incarceration term indicated in the Criminal History I Column" for that offense. Thus, on the second conviction, the judge could impose a sentence of up to 60 months (the maximum sentence allowed in grid block 10-I). If the judge imposes the maximum on the second sentence, the defendant's total incarceration term will be 150 months. This term is less than twice the maximum presumptive incarceration term of the primary sentence; thus, no reduction need be made for the 200 percent rule.

Now, assume that the judge imposes a departure sentence on each conviction. Under OAR 253-08-007(3), the departure on each conviction is limited to twice the presumptive sentence already determined. Thus, on count one, the judge may impose a maximum departure sentence of 180 months. On count two, the judge may impose a maximum departure sentence of 120 months. Consequently, for both convictions together, the maximum incarceration term is 300 months. Although that term is less than four times the presumptive sentence of the primary offense, it is still the maximum total incarceration term that may be imposed under the guidelines.

[17] Similarly, OAR 253-12-020(2)(b) limits the "total incarceration term" of the consecutive sentences.

sentence, the sentencing judge must indicate on the record "the presumptive sentence that would have been imposed if the court had not imposed the [dangerous offender] sentence * * * as a departure." ORS 161.737(2). Then, "[t]he offender is eligible for release to post-prison supervision after having served the presumptive sentence established under ORS 161.737." ORS 144.232(1). Thus, the presumptive sentence under the guidelines is the determinate part of the dangerous offender sentence, *viz.*, the part that the offender *must* serve. The remainder of the dangerous offender sentence is the indeterminate part of the sentence, *i.e.*, the part that the offender *may* serve, but from which the offender may be released to post-prison supervision. Given that the determinate part of a dangerous offender sentence is the presumptive sentence under the guidelines, *it is the indeterminate part of the sentence that makes a dangerous offender sentence a departure sentence*. It would make no sense if OAR 253-08-007(3), a rule limiting *departure* sentences, did not operate to limit the part of the sentence *that is a departure*, yet that is what the state's interpretation would mean.

Acceptance of the state's argument would render the limitation in OAR 253-08-007(3) a nullity where a dangerous offender sentence is imposed. OAR 253-08-007(3) states that "the incarceration term of [a] departure sentence shall not exceed twice the maximum presumptive incarceration term that may be imposed for that offense." However, if, as the state argues in the context of a dangerous offender sentence, the "incarceration term" *is* the presumptive sentence under the guidelines, then the rule has no meaning. By the state's interpretation, what OAR 253-08-007(3) actually says is: "[T]he [presumptive sentence] of [a] departure sentence shall not exceed twice the maximum [presumptive sentence] that may be imposed for that offense." To provide that a presumptive sentence, which is limited by definition, may not exceed twice itself would make no sense.

If, however, the *entire* indeterminate term of a dangerous offender sentence is considered the "incarceration term" of that sentence, then OAR 253-08-007(3) serves a substantial purpose. The sentencing judge will first determine the presumptive sentence that may be imposed for the designated offense consistent with the 200 percent rule of

OAR 253-12-020(2), *i.e.*, a presumptive sentence where consecutive sentences have been imposed. Then, in imposing a dangerous offender sentence as a departure from that presumptive sentence, the judge will be limited to imposing a sentence of no more than twice that presumptive sentence.

█        The state argues that interpreting OAR 253-08-007(3) to apply to the entire indeterminate term of a dangerous offender sentence will eviscerate the dangerous offender statutes. We do not believe that fairly characterizes the rule that we announce, but, even if that were so, this court would not be free to disregard the legislative mandate set out in ORS 137.121, which provides that, *"[n]otwithstanding any other provision of law,* but subject to ORS 161.605, the maximum consecutive sentences which may be imposed for felonies committed on or after November 1, 1989, * * * shall be as provided by rules of the State Sentencing Guidelines Board." (Emphasis supplied.) To honor that mandate and to give effect to the consecutive sentence rules in the context of a dangerous offender sentence, OAR 253-08-007(3) must apply to the entire indeterminate term of a dangerous offender sentence, as we have explained. We hold that "incarceration term," as that phrase is used in OAR 253-08-007(3), refers to the entire indeterminate term of a dangerous offender sentence.

It follows that the sentences imposed in this case were imposed in violation of OAR 253-08-007(3). The maximum aggregate sentence that could be imposed on defendant was 360 months. The Court of Appeals was correct in its decision to remand for resentencing.

The decision of the Court of Appeals is affirmed. The judgment of conviction is affirmed. The case is remanded to the circuit court for resentencing.