716 December 21, 2023 No. 37

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

WILLIAM JACK PARKERSON,
*Petitioner on Review.*

(CC 16CR67985) (CA A166232) (SC S069918)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 19, 2023.

Stephanie Hortsch, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Philip Thoennes, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

BUSHONG, J.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for resentencing.

James, J., concurred and filed an opinion, in which Masih, J., joined.

_____
* Appeal from Klamath County Circuit Court, Andrea M. Janney, Judge. 319 Or App 477, 511 P3d 25 (2022).

**BUSHONG, J.**

Defendant was convicted of assault in the first degree and sentenced to a term of imprisonment under Oregon's dangerous offender statutes. He challenges that sentence, contending that (1) the trial court violated ORS 161.735 when it sentenced him as a dangerous offender without reviewing new presentence investigation (PSI) and psychological evaluation reports that had been prepared specifically for this case; and (2) the determinate part of his sentence—that is, the part that he must serve before he can be released to post-prison supervision[1]—exceeds the maximum sentence allowed by ORS 161.605 and OAR 213-008-0003(2).

The Court of Appeals rejected both arguments, *State v. Parkerson*, 319 Or App 477, 511 P3d 25 (2022), and we allowed review to address these important issues of statutory interpretation. We agree with the Court of Appeals that the determinate part of defendant's sentence did not exceed the statutory maximum. But we conclude that the trial court erred in sentencing defendant as a dangerous offender using old PSI and psychological evaluation reports, because the statute required the court to consider new reports prepared for this case. Accordingly, we reverse and remand for resentencing.

## I.   BACKGROUND

A.   *Historical Facts*

There are two separate criminal proceedings relevant to this case. First, defendant was convicted of attempted aggravated murder and first-degree assault with a firearm for shooting a sheriff's deputy ("the shooting case"). *State v. Parkerson*, 310 Or App 271, 273, 484 P3d 356 (2021), *rev den*, 369 Or 505 (2022) (affirming those convictions). The state sought a dangerous offender sentence in that case, and the trial court ordered a psychological evaluation and PSI

---

[1] *See State v. Davis*, 315 Or 484, 495, 847 P2d 834 (1993) (stating that the "determinate" part of a dangerous offender sentence is "the part that the offender *must* serve[,]" and that the "indeterminate" part is "the part that the offender *may* serve, but from which the offender may be released to post-prison supervision." (Emphases in original.)).

pursuant to ORS 161.735. Defendant participated in the psychological evaluation but not the PSI. Ultimately, the court concluded that defendant was a dangerous offender and sentenced him accordingly. Defendant's convictions in the shooting case were affirmed on appeal, and that dangerous offender sentence is not before us.

Second, several months after his conviction in the shooting case, defendant was indicted on a charge of first-degree assault based on an earlier incident in which he attacked the victim with a knife. A jury convicted defendant of that charge. The state again requested, and the court again imposed, a dangerous offender sentence. That sentence is before us on review.

B.  *Sentencing Proceedings*

After the state requested a dangerous offender sentence in the present case, the trial court ordered a PSI and a psychological evaluation. Defendant declined to participate in either process. The PSI and psychological evaluation ordered by the court were never done, and, consequently, the court did not receive or consider PSI and psychological evaluation reports prepared for this case. The court proceeded with sentencing, considering testimony offered at the hearing and redacted versions of the psychological evaluation and PSI reports prepared for defendant's sentencing in the shooting case. The redactions removed defendant's express statements in an attempt to comply with ORS 161.735(4), which precludes using the defendant's statements made in connection with a dangerous offender PSI and psychological evaluation "in any other criminal proceeding."

Dr. Phillips, the psychologist who had prepared the previous evaluation, testified that, despite defendant's lack of participation in a second psychological evaluation, she could make a diagnosis "'solely based upon the records if the records are comprehensive enough.'" *Parkerson*, 319 Or App at 483. She stated that her initial evaluation of defendant had included his self-report, but she removed that material and based her subsequent evaluation solely upon the discovery, the Department of Corrections (DOC) records, and her rescoring of the psychological tests—without defendant's

self-report. She also considered the information about defendant's prior attempted murder and assault convictions in the shooting case, and the information about his conviction in the current case. Based on that material, Phillips stated in a short cover letter and testified at the hearing that it was her opinion that defendant met "'the diagnostic criteria for antisocial personality disorder'"—one of the requirements for dangerous offender sentencing under ORS 161.725—but she did not submit a full written report explaining her evaluation. *Id.*

The state also offered the earlier PSI report from the shooting case and the testimony of Edson, who had prepared it. Edson testified that, although he did not prepare a new PSI for this case, he could have drafted a new PSI without defendant's participation by using "proxy data"—a reference to the offender's age at the time of the charged offense, his number of prior arrests, and his age at the time of his first arrest. *Id.*

Defendant objected to the procedures employed in his dangerous offender sentencing, arguing that ORS 161.735 required the court to consider a new psychological evaluation and a new PSI. Defendant further argued that the state's attempt to comply with ORS 161.735(4) by redacting his statements from the previous reports was insufficient because the court was prohibited from using a psychological evaluation drawn, in part, from defendant's previous interviews and other self-reported information, even if the statements themselves were redacted. The state responded that its experts should be able to offer opinions based on information that was properly admissible, excluding any statements or self-reported information by defendant in the shooting case.

The trial court overruled defendant's objections. With respect to the psychological evaluation, the court reasoned as follows:

"[A]lthough a new psychological evaluation was ordered, the Defendant refused to participate in one. The psychological evaluation that was done before not as to [defendant's] statements but the other 1,800 pages of discovery that [the state] talked about is identical to the information that

would essentially be used for the new evaluation, there's no substantive changes. It is the very exact same information that would be used to make the new report, minus [defendant's] statements. The Court does find that because this is a new evaluation and [defendant] chose not to participate, those statements cannot be used and will not be used in this new evaluation and cannot be considered by the Court or in the doctor's opinion should she testify as to one."

The court applied the same reasoning to the PSI report and sentenced defendant as a dangerous offender. The court made the findings required by ORS 161.725 (not challenged here) and sentenced defendant to a 30-year indeterminate sentence—the maximum indeterminate sentence allowed by ORS 161.725—with a 260-month determinate term that defendant must serve before release to post-prison supervision. Defendant appealed.

C. *Court of Appeals Decision*

The Court of Appeals affirmed the judgment of conviction and sentence, rejecting defendant's challenge to the trial court's use of the PSI report and psychological evaluation from the shooting case to sentence defendant as a dangerous offender in this case. Relying on *State v. Odoms*, 117 Or App 1, 844 P2d 217 (1992), *rev den*, 316 Or 529 (1993),[2] the court concluded that, "in the absence of defendant's willingness to cooperate with a new evaluation, there was nothing in ORS 161.735(1) that prohibited the court from receiving the redacted psychological evaluation and the previous PSI that had been prepared less than one year before." *Parkerson*, 319 Or App at 486. The Court of Appeals also rejected defendant's challenge to the trial court's decision to impose a 260-month determinate part of the 30-year dangerous offender sentence, concluding that the sentence "was

---

[2] In *Odoms*, the defendant argued on appeal that the trial court's dangerous offender findings "were not supported by the record, because the state's expert had not evaluated him personally since 1980." 117 Or App at 7. The defendant did not contend that the trial court failed to follow the dangerous offender sentencing procedures in ORS 161.735, and it appears from the Court of Appeals' opinion that the state's expert may have submitted a report based on police reports and other records even though the expert had not conducted a new evaluation. *See id.* (describing the basis for the expert's opinion, stating that the trial court "must consider the report," and concluding that, "[e]ven if all the report discloses is that the defendant was uncooperative and that a psychiatric analysis could not be made, that does not render the report insufficient for purposes of ORS 161.735").

within the court's discretion under the applicable statutes." *Id*. at 479. Defendant sought review, which we allowed, in part.[3]

## II.   DISCUSSION

We review a defendant's challenge to a trial court's interpretation of the applicable statutes in sentencing the defendant as a dangerous offender for errors of law. *See State v. Thompson*, 328 Or 248, 256-57, 971 P2d 879 (1999) (trial court's interpretation of a statute is reviewed for legal error). When interpreting a statute, we attempt to discern the intent of the legislature that enacted it. ORS 174.020; *see also State v. McDowell*, 352 Or 27, 30, 279 P3d 198 (2012) (noting that "[o]ur task is to discern what the legislature contemplated" in enacting the statute at issue). To determine that intent, we give primary weight to the statutory text in context, with appropriate additional weight accorded to any relevant legislative history. *City of Portland v. Bartlett*, 369 Or 606, 610, 509 P3d 99 (2022); *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

A.   *Dangerous Offender Sentencing Procedure*

ORS 161.725 sets the standards for dangerous offender sentencing. ORS 161.735 lays out the procedures for sentencing a defendant as a dangerous offender. Defendant does not dispute that he may qualify as a dangerous offender under ORS 161.725; rather, defendant contends that the trial court did not comply with the sentencing procedures required by ORS 161.735. Specifically, defendant contends that the trial court erred when it sentenced him as a dangerous offender without reviewing PSI and psychological evaluation reports that had been prepared for this case.

---

[3] Defendant had raised several assignments of error at the Court of Appeals, which affirmed the trial court's judgment in all respects. He raised seven questions in his petition for review. We allowed review to consider only three of those questions: (1) whether a trial court errs in imposing a dangerous offender sentence when it relies on PSI and psychological evaluation reports from a previous case; (2) whether a trial court is limited by the maximum felony sentences provided in ORS 161.605 when imposing the determinate part of a dangerous offender sentence; and (3) whether a trial court errs in admitting redacted reports from a previous dangerous offender sentencing proceeding in light of the prohibition under ORS 161.735(4). As explained more fully below, we found it unnecessary to reach the third question.

ORS 161.735 provides, in pertinent part, as follows:

"(1)  Upon motion of the district attorney, and if, in the opinion of the court, there is reason to believe that the defendant falls within ORS 161.725, the court shall order a presentence investigation and an examination by a psychiatrist or psychologist. The court may appoint one or more qualified psychiatrists or psychologists to examine the defendant in the local correctional facility.

"* * * * *

"(3)  The examination performed pursuant to this section shall be completed within 30 days, subject to additional extensions not exceeding 30 days on order of the court. Each psychiatrist and psychologist appointed to examine a defendant under this section shall file with the court a written report of findings and conclusions, including an evaluation of whether the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity.

"(4)  No statement made by a defendant under this section * * * shall be used against the defendant in any civil proceeding or in any other criminal proceeding.

"(5)  Upon receipt of the examination and presentence reports the court shall set a time for a presentence hearing, unless the district attorney and the defendant waive the hearing. At the presentence hearing the district attorney and the defendant may question any psychiatrist or psychologist who examined the defendant pursuant to this section.

"(6)  * * * [A]fter considering the evidence in the case or in the presentence hearing, * * * the court may sentence the defendant as a dangerous offender."

The first issue presented in this case is whether the legislature intended for the trial court to order and consider PSI and psychological evaluation reports that were specifically prepared for the case before the court for sentencing, as defendant contends, or whether the trial court may instead use only PSI and psychological evaluation reports that had been prepared earlier for a different case, as the state contends. We begin with the text and context of ORS 161.735.

1.  *Statutory text and context*

The text of ORS 161.735, quoted above, reveals that dangerous offender sentencing follows a carefully structured process that includes a specific time frame. Under subsection (1), the process starts with a "motion" by the district attorney requesting a dangerous offender sentence. If, in the opinion of the court, based on the evidence at trial and the district attorney's request, "there is reason to believe" that defendant might qualify for dangerous offender sentencing under ORS 161.725, then the court "shall order" a PSI and psychological evaluation. ORS 161.735(1).

Subsection (3) of ORS 161.735 provides that the psychological examination "performed pursuant to this section shall be completed within 30 days"—subject to possible extensions not exceeding 30 days. The examination "performed pursuant to this section" can only mean the examination ordered by the court under subsection (1) of the statute. ORS 161.735(3). As noted, that examination must be completed "within 30 days" (unless extended by the court). *Id*. After completing the examination, the evaluator is required by subsection (3) to "file with the court a written report of findings and conclusions[.]" That report must include an evaluation of whether the defendant "is suffering" from a severe personality disorder indicating a propensity toward criminal activity.[4] *Id*.

The statute does not specify a precise time for filing the psychological examination report, nor does it specify a precise time for completing the PSI and filing that report— also referred to as the presentence report. However, subsection (5) of ORS 161.735 requires the court to schedule a presentence hearing "[u]pon receipt of the examination and presentence reports." That text suggests that the presentence report and the psychological examination report will

---

[4] The requirement in ORS 161.735(3) that the written report must include "an evaluation of whether the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity" is designed to help the trial court decide whether the defendant qualifies to be sentenced as a dangerous offender under the standards set out in ORS 161.725. One of the grounds for sentencing a defendant as a dangerous offender is whether "the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life and safety of another." ORS 161.725(1)(a), (b), (c).

be submitted to and received by the court soon after the reports are completed. The court is then required to schedule a hearing "[u]pon receipt" of those reports. *Id.* Although not expressly stated, implicit in the process described in subsections (5) and (6) is a requirement that, in deciding whether to sentence a defendant as a dangerous offender, the court must consider the examination and presentence reports prepared pursuant to its order under subsection (1).

Thus, the text of ORS 161.735(1), (3), (5), and (6) describes a process with both explicit and implicit time constraints that guide the trial court's assessment of whether a defendant should be sentenced as a dangerous offender. That assessment includes determining whether the defendant "is suffering"—present tense—from a severe personality disorder indicating a propensity toward criminal activity at the time of sentencing. *See* ORS 161.725(1)(a), (b), (c) (so stating). Nothing in the text of the statute suggests that a court can sentence a defendant as a dangerous offender without considering PSI and psychological evaluation reports prepared for the case in which the court is imposing a sentence.

That reading of the statutory text is supported by subsection (4) of ORS 161.735, which provides that "[n]o statement made by a defendant under this section"— that is, when being evaluated for dangerous offender sentencing—"shall be used against the defendant in any civil proceeding *or in any other criminal proceeding.*" (Emphasis added.) The "other criminal proceeding" referred to in subsection (4) can only mean a criminal proceeding other than the criminal proceeding for which the evaluation was conducted. The apparent purpose of that provision is to encourage defendants to cooperate with the evaluation by assuring them that any statements they make can only be used in the sentencing proceeding for which they are being evaluated. Prohibiting the use of a defendant's statements from old psychological evaluation and PSI reports in subsequent criminal proceedings is consistent with that purpose.

As part of the text and context, "we also consider case law interpreting the statute at issue and related statutes, including earlier versions of those statutes." *SAIF v. Walker*, 330 Or 102, 109, 996 P2d 979 (2000). In *State v. Huntley*, 302

Or 418, 730 P2d 1234 (1986), the trial court sentenced the defendant as a dangerous offender even though the psychological evaluation prepared in that case concluded that the defendant "'[did] not suffer from a severe personality disorder with a propensity towards criminal activity.'" *Id.* at 421. We allowed review "to interpret the dangerous offender statutes" and to decide whether the trial court erred in sentencing the defendant as a dangerous offender notwithstanding the psychologist's conclusion. *Id.* at 422.

After reviewing the text, context, and legislative history of the dangerous offender statutes, we summarized how those statutes were intended to function.[5] As we explained, applying the statutes "requires careful and complete findings by a judge." *Id.* at 437. The sentencing judge "must first declare" that there is reason to believe that an extended period of confinement is required to protect the public. *Id.* Next, the judge must "make appropriate findings on the record to justify that belief." *Id.* "After making [those] findings, the judge must order a presentence report and psychiatric examination of the defendant." *Id.* Then, "[a]fter receiving these reports, the judge must *** conduct a presentence hearing unless waived by the defendant." *Id.* At that hearing, the judge "must consider the presentence report, the psychiatric report, and the evidence in the case or evidence presented at the presentence hearing." *Id.* The court "then must make findings" on (1) whether the defendant is dangerous; (2) whether an extended period of confinement is required to protect the public; and (3) whether the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity. *Id.* at 437-38.

Our description in *Huntley* of the dangerous offender sentencing statutes confirms that those statutes describe a carefully structured process. We observed in *Huntley* that the legislative purpose served by that process is "to provide procedural safeguards for the defendant, while at the same time furnishing the court with as much information

---

[5] On the specific sentencing issue presented in *Huntley*, we concluded that the trial court did not err in sentencing the defendant as a dangerous offender because the court "is not bound by the conclusions of any psychotherapist but is required by statute to make his or her own findings on that issue." *Id.* at 435.

as can be obtained on which to base an intelligent decision." *Id.* at 424 (quoting Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 86, 83 (July 1970) (emphasis from *Huntley* omitted)). Nothing from the text of the statute, in context, indicates that the legislature intended to allow a court, in deciding whether to sentence a defendant as a dangerous offender, to shortcut the process and make a dangerous offender sentencing decision without the benefit of PSI and psychological evaluation reports that have been prepared for that case, as ordered by the court.[6]

### 2. *Application to this case*

In *Huntley*, we noted that the "principal purpose" of the statutes "is to focus special attention on the dangerous offender." 302 Or at 436. The procedures set out in ORS 161.735 were designed to provide that focus, thereby allowing the sentencing judge to make the "careful and complete findings" the statutes require. *Id.* at 437. Our review of the text of ORS 161.735—which is "the best evidence of the legislature's intent[,]" *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993)—leads us to conclude that a court sentencing a defendant as a dangerous offender must follow the procedures that were carefully designed by the legislature. Nothing in the context or the legislative history of ORS 161.735 supports a contrary conclusion. The

---

[6] The legislative history of Oregon's dangerous offender statutes provides little assistance in determining the legislature's intent when it required trial courts to order PSI and psychological evaluation reports as part of the dangerous offender sentencing procedure. The statutes were proposed by Senate Bill (SB) 40 (1971) and enacted as part of the legislature's comprehensive overhaul of the Criminal Code. Or Laws 1971, ch 743, §§ 85, 86. Those sections were based on section 5 of the Model Sentencing Act (1963) and designed to replace the existing patchwork of enhanced sentencing frameworks (*i.e.*, habitual criminal activity, firearm felonies, and certain sex offenses) with a unified approach for dangerous offenders. Tape Recording, Senate Committee on Criminal Law and Procedure, SB 40, Feb 17, 1971, Tape 4, Side 2 (statement of Donald Paillette). Section 86 of the 1971 Act (codified as ORS 161.735) established the process for determining whether a defendant should be sentenced as a dangerous offender. Commentary § 86 at 83. The purpose of that section was to provide procedural safeguards for a defendant who is subject to dangerous offender sentencing, while giving the court as much information as possible to make a well-informed decision. *Id*. The legislature amended ORS 161.735 several times after Oregon adopted the felony sentencing guidelines in 1989. None of those amendments provides any additional evidence of what the legislature intended by requiring a PSI and psychological evaluation as part of the dangerous offending sentencing procedure.

procedures specified in the statute require the trial court to both order and consider PSI and psychological evaluation reports that have been prepared in the case for which dangerous offender sentencing is being considered.

It is undisputed that the trial court in this case *ordered* a PSI and psychological evaluation, but it sentenced defendant as a dangerous offender without *receiving* the PSI and psychological evaluation reports that it had ordered. The state's argument implies that the statutory requirements can be disregarded where, as here, a defendant refuses to cooperate with the PSI and psychological evaluation. That suggestion misses the point: Compliance with the statutory requirements is mandatory, not discretionary, and a defendant's refusal to participate does not allow the court to ignore those requirements. As noted above, the witnesses at the presentence hearing in this case both testified that they could have prepared PSI and psychological evaluation reports based on the information that was available to them without defendant's cooperation, but they did not do so. The state's argument that redacted versions of the PSI report and psychological evaluation report prepared for the earlier case were "admissible" as other evidence at the presentence hearing also misses the point. The issue is whether the court complied with the statutory procedures in sentencing defendant as a dangerous offender, not whether the evidence that was presented at the hearing was admissible.[7]

We conclude that the court did not comply with the sentencing procedures required by ORS 161.735. That error requires reversal and a remand for resentencing that complies with the statute. Accordingly, we need not decide whether the admission of the redacted versions of the earlier reports violated the prohibition against using a defendant's statements "in any other criminal proceeding." ORS 161.735(4).

---

[7] Defendant concedes in his reply brief that some of that evidence might have been admissible to *supplement* the PSI and psychological evaluation that should have been prepared for this case. But defendant maintains that the sentencing process requires compliance with the statutory procedures: to prepare and file PSI and psychological evaluation reports in the case for which the court is considering a dangerous offender sentence.

B.	*Maximum Determinate Sentence for Dangerous Offenders*

Defendant also asked us to determine review the second issue—whether the 260-month determinate sentence exceeds the statutory maximum—and did not request that we defer ruling on that issue if we ruled in his favor on the first issue. Based on defendant's request, and the fact that the parties have fully briefed and argued that issue, and because the issue may arise on remand, we believe that it is appropriate to address the issue now. *See State v. Weaver*, 367 Or 1, 33, 472 P3d 717 (2020) ("[W]e believe that it is appropriate to address two issues that may arise on remand."); *State v. Sperou*, 365 Or 121, 141, 442 P3d 581 (2019) (deciding disputed evidentiary issue "because that issue [was] likely to arise again on remand"). We begin with the text and context of the relevant statutory and regulatory provisions.

ORS 161.737(2) provides that the determinate part of a dangerous offender sentence "shall be * * * no more than twice the maximum presumptive incarceration term" under the sentencing guidelines. It is undisputed that "twice the maximum presumptive incarceration term" under the sentencing guidelines in this case was 260 months.[8] *Id*. Defendant contends, however, that the 260-month determinate part of the sentence imposed by the court was unlawful because it exceeded the 20-year (240 month) maximum stated in ORS 161.605 and OAR 213-008-0003(2).

ORS 161.605 provides, in pertinent part:

"The maximum term *of an indeterminate sentence* of imprisonment for a felony is as follows:

"(1)	For a Class A felony, 20 years."

(Emphasis added.) OAR 213-008-0003(2) provides:

"A durational departure from a presumptive prison term shall not total more than double the maximum duration of the presumptive prison term. *In no case may the sentence exceed the statutory maximum indeterminate sentence described in ORS 161.605.*"

---

[8] Based on his criminal history, defendant would have been sentenced under grid block 10A for assault in the first degree under the sentencing guidelines. The maximum presumptive sentence under that grid block was 130 months.

(Emphasis added.) Defendant contends that, although those provisions expressly limit the *indeterminate* part of the sentence, when read together with ORS 161.737, they also limit the maximum *determinate* part of the sentence.[9] Subsection (1) of ORS 161.737 provides that a dangerous offender sentence "shall constitute a departure from the sentencing guidelines," and the last sentence of subsection (2) of ORS 161.737 provides for an exception to the guideline rules that only applies to *indeterminate* sentences.[10]

Defendant reasons as follows: (1) Under ORS 161.737(1), a dangerous offender sentence is a departure sentence that is generally subject to the sentencing guidelines limitations on departure sentences; (2) the legislature only exempted the *indeterminate* part of a dangerous offender sentence from the sentencing guidelines' limits on departure sentences under ORS 161.737(2); and (3) the omission of the *determinate* part of the sentence from that exemption means that the legislature intended for the guideline limits on departure sentences to apply to the determinate part of a dangerous offender sentence. The Court of Appeals disagreed, concluding that the limitation on indeterminate sentences in ORS 161.605 and OAR 213-008-0003(2) does not apply to the determinate part of a dangerous offender sentence. We agree with that conclusion.

---

[9] As noted above, the "indeterminate" part of a sentence is the term of imprisonment that a defendant *may* serve, and the "determinate" part of a sentence is the term that a defendant *must* serve before his release to post-prison supervision. *See Davis*, 315 Or at 495.

[10] ORS 161.737(2) provides:

"When the sentence is imposed, the sentencing judge shall indicate on the record the reasons for the departure and shall impose, in addition to the indeterminate sentence imposed under ORS 161.725, a required incarceration term that the offender must serve before release to post-prison supervision. If the presumptive sentence that would have been imposed if the court had not imposed the sentence under ORS 161.725 and 161.735 as a departure is a prison sentence, the required incarceration term shall be no less than the presumptive incarceration term and no more than twice the maximum presumptive incarceration term. If the presumptive sentence for the offense is probation, the required incarceration term shall be no less than the maximum incarceration term provided by the rule of the Oregon Criminal Justice Commission that establishes incarceration terms for dispositional departures and no more than twice that amount. *However, the indeterminate sentence imposed under this section and ORS 161.725 is not subject to any guideline rule establishing limitations on the duration of departures.*"

(Emphasis added.)

Starting with the text of the relevant statutes, we first note that ORS 161.725(1) provides that "the maximum term of an *indeterminate* sentence of imprisonment for a dangerous offender is 30 years." (Emphasis added.)[11] That statute does not specify a maximum term of the *determinate* part of a dangerous offender sentence. But it does say that dangerous offender sentencing is "[s]ubject to the provisions of ORS 161.737[.]" *Id*.

Subsection (1) of ORS 161.737 provides that a dangerous offender sentence "shall constitute a departure from the sentencing guidelines created by rules of the Oregon Criminal Justice Commission."[12] Subsection (2) of ORS 161.737 provides that, in addition to imposing the indeterminate sentence under ORS 161.725, the trial court "shall impose * * * a required incarceration term that the offender must serve before release to post-prison supervision." This "required incarceration term" is commonly referred to as the "determinate" part of the sentence, as noted above. *Id*. ORS 161.737(2) also provides, in part, that, "[i]f the presumptive sentence that would have been imposed if the court had

---

[11] ORS 161.725(1) provides:

"Subject to the provisions of ORS 161.737, the maximum term of an indeterminate sentence of imprisonment for a dangerous offender is 30 years, if because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and one or more of the following grounds exist:

"(a) The defendant is being sentenced for a Class A felony and the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another.

"(b) The defendant is being sentenced for a felony that seriously endangered the life or safety of another, the defendant has been previously convicted of a felony not related to the instant crime as a single criminal episode and the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another.

"(c) The defendant is being sentenced for a felony that seriously endangered the life or safety of another, the defendant has previously engaged in unlawful conduct not related to the instant crime as a single criminal episode that seriously endangered the life or safety of another and the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another."

[12] We interpreted that language in *Davis* to mean that a *specific* dangerous offender sentence is a "departure sentence *within* the guidelines," not that dangerous offender sentencing *as a whole* is separate and apart from the guidelines. 315 Or at 489-90 (emphases in original).

not imposed the sentence under ORS 161.725 and 161.735 as a departure is a prison sentence, *the required incarceration term shall be* no less than the presumptive incarceration term and *no more than twice the maximum presumptive incarceration term.*" (Emphasis added.)

Defendant contends that, in addition to that limitation on the determinate part of a dangerous offender sentence, the last sentence of ORS 161.737(2) reveals the legislature's intent to *further* limit the determinate part of a dangerous offender sentence with the 20-year maximum for Class A felonies under ORS 161.605(1). Defendant reasons that the logical implication of the last sentence of ORS 161.737(2)—which expressly excludes the indeterminate sentence from the guideline rules—means that the *determinate* part of a sentence *is* subject to guideline rules establishing limitations on departure sentences. We are unpersuaded by that argument in this context.

Defendant's interpretation is contrary to the provision in ORS 161.737(2), quoted above, which expressly addresses the maximum *determinate* part of the sentence, stating that "the required incarceration term shall be ∗∗∗ no more than twice the maximum presumptive incarceration term." If the legislature wanted to make the 20-year maximum for a Class A felony an additional limitation on the maximum determinate part of a dangerous offender sentence, it would not have expressly provided for a different maximum.

Defendant also contends that, aside from the statute, the guidelines rule itself limits the length of the determinate part of the sentence. OAR 213-008-0003(2) states that "[i]n no case may *the sentence* exceed the statutory maximum *indeterminate* sentence described in ORS 161.605." (Emphases added.) Subsection (3) of that rule states, "The limit on durational departures established by section (2) of this rule does not apply to the indeterminate sentence imposed on a dangerous offender [under] ORS 161.725 and 161.737." OAR 213-008-0003(3). Defendant reasons that, because subsection (2) provides that "the sentence" may not exceed the maximum indeterminate sentence in ORS 161.605, and subsection (3) only excludes "the indeterminate

sentence" imposed on a dangerous offender, the "determinate" part of "the sentence" is subject to the limitation in ORS 161.605.

That reasoning, again by negative implication, is contrary to the plain terms of ORS 161.737(2), which, as noted above, provides that the maximum determinate part of the sentence shall be "no more than twice the maximum presumptive incarceration term." If the legislature had intended for the maximum determinate part of the sentence to be "no more than twice the maximum presumptive incarceration term, or the maximum indeterminate sentence in ORS 161.605, whichever is shorter," we think that it would have said so directly.[13] Thus, nothing in the text of the dangerous offender statutes or the sentencing guidelines rules show that the legislature intended for the 20-year maximum indeterminate sentence in ORS 161.605(1) to apply to the determinate part of a dangerous offender sentence.

The enactment history of ORS 161.737 confirms our understanding.[14] When that statute was originally enacted in 1989, it required the sentencing judge to "indicate on the record * * * the presumptive sentence that would have been imposed if the court had not imposed" a dangerous offender sentence. Or Laws 1989, ch 790, § 77(2). The "required incarceration term"—the "determinate part" of the sentence—under the statute as originally enacted provided that a person sentenced to prison as a dangerous offender may be released to post-prison supervision "after having served the presumptive sentence established under section 77" of the 1989 Act. Or Laws 1989, ch 790, § 80(1) (codified as ORS 144.232).

Thus, under the statute as it was enacted in 1989, the required duration of the determinate part of the sentence was the presumptive sentence under the sentencing guidelines.

---

[13] To the extent the negative implication of the general sentencing limitations in ORS 161.605(1) and OAR 213-008-0003(2) can be read to conflict with the provision in ORS 161.737(2) that specifically addresses the maximum determinate part of a dangerous offender sentence, as defendant contends, the more specific statute controls. ORS 174.020(2); *see Powers v. Quigley*, 345 Or 432, 438, 198 P3d 919 (2008) (so stating).

[14] The enactment history of a statute is part of its context. *State ex rel Penn v. Norblad*, 323 Or 464, 467, 918 P2d 426 (1996).

We acknowledged that fact in *State v. Davis*, 315 Or 484, 847 P2d 834 (1993). *See id.* at 489 (noting that ORS 161.737(2) requires the judge to "indicate on the record" the presumptive sentence under the sentencing guidelines and that, under ORS 144.232(1), that presumptive sentence "serves as the determinate part of the dangerous offender sentence—*i.e.*, the part that *must* be served" (emphasis in original)).

The legislature amended ORS 161.737(2) and ORS 144.232(1) in 1993 to change the determinate part of the sentence from the presumptive sentence under the guidelines to no more than *twice* the maximum presumptive sentence. Or Laws 1993, ch 334, § 4 (amending ORS 144.232(1)); *id.* § 6 (amending ORS 161.737(2)). Section 6 of the 1993 act amended ORS 161.737(2) to require the trial court to "impose *** a required incarceration term that the offender must serve before release to post-prison supervision" and that the "required incarceration term" shall be "no more than twice the maximum presumptive incarceration term." Or Laws 1993, ch 334, § 6. Section 4 of the 1993 Act amended ORS 144.232(1) to provide that a dangerous offender may be released to post-prison supervision after having served "the required incarceration term" specified in section 6 of the 1993 Act (ORS 161.737(2)). Or Laws 1993, ch 334, § 4. That is how both statutes are currently worded.

Thus, the "required incarceration term" that a dangerous offender must serve before the offender is released to post-prison supervision was changed in 1993 from being the presumptive sentence under the sentencing guidelines to no more than *twice* the maximum presumptive sentence under the guidelines. Or Laws 1993, ch 334, § 6. As noted above, in this case, twice the maximum presumptive sentence under the sentencing guidelines for defendant is 260 months, which is the determinate portion of the sentence imposed by the trial court. As such, the sentence imposed by the trial court did not exceed the maximum allowed by the statute.

Defendant contends that the legislative history of the 1993 act shows that the legislature intended for the limits on departure sentences to apply to determinate sentences that exceeded the presumptive sentence. But, as we

explained above, ORS 161.737 expressly provides that the maximum determinate part of a dangerous offender sentence is twice the maximum presumptive sentence under the guidelines, not the maximum indeterminate sentence provided in ORS 161.605. And where the text of a statute "is truly capable of having only one meaning, no weight can be given to legislative history that suggests—or even confirms—that legislators intended something different." *Gaines*, 346 Or at 173.

In any event, we see nothing in the legislative history of the 1993 Act showing any clear intent to have ORS 161.605 set a maximum determinate part of a dangerous offender sentence. A proponent of the bill—introduced as HB 2483 (1993)—testified that the legislation was designed to make the dangerous offender sentencing "compatible with the guidelines," because, without the amendment, a dangerous offender could be considered for release to post-prison supervision in half the time that an ordinary offender with a maximum departure sentence would become eligible. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2483, Feb 9, 1993, Tape 17, Side A (statement of Susan Tripp). Thus, the legislation amended ORS 144.232(1) and ORS 161.737 to change the required determinate part of the sentence to no more than twice the maximum presumptive sentence provided by the guidelines, as discussed above.

Another goal of the 1993 legislation was to overturn our interpretation of the dangerous offender statutes in *Davis*. In that case, we had held that indeterminate dangerous offender sentences were subject to the guidelines' consecutive sentencing rules. According to the same proponent, that holding had crippled the efficacy of the dangerous offender sentencing scheme. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2483, Feb 2, 1993, Tape 12, Side B (statement of Susan Tripp). Thus, the bill amended ORS 161.737(2) to provide that the indeterminate part of a dangerous offender sentence "is not subject to any guideline rule establishing limitations on the duration of departures." Or Laws 1993, ch 334, § 6.

Defendant argues, again by negative implication, that because the 1993 amendment expressly applies only to the indeterminate part of a dangerous offender sentence, the legislature must have intended for the guideline rules—specifically, OAR 213-008-0003(2), which references ORS 161.605—to apply to the determinate part of a dangerous offender sentence. But as explained above, that reasoning is contrary to the express terms of ORS 161.737—which specifies the maximum determinate part of a dangerous offender sentence without reference to ORS 161.605—and the express terms of OAR 213-008-0003(2) and (3). In light of the text of ORS 161.737, defendant's attempt to find legislative intent by negative implication fails in this context.[15]

In sum, we conclude that the maximum determinate part of a dangerous offender sentence that may be imposed is twice the presumptive sentence under the sentencing guidelines, that is, 260 months in this case. We express no opinion on what sentence the court should impose when it resentences defendant on remand.

### III. CONCLUSION

The trial court erred in sentencing defendant as a dangerous offender without PSI and psychological evaluation reports prepared for this case, as required by ORS 161.735. Accordingly, we reverse and remand to the trial court for resentencing consistent with this opinion.

**JAMES, J.,** concurring in part.

I agree with the majority that the trial court erred in imposing a dangerous offender sentence on defendant without relying on a psychological report that complied with

---

[15] The Court of Appeals has noted that, after the 1993 amendments to ORS 161.737(2), "the determinate portion of a dangerous offender sentence can now exceed the presumptive term to the same extent as an ordinary departure sentence[.]" *State v. Worth*, 274 Or App 1, 34, 360 P3d 536 (2015), *rev den*, 359 Or 667 (2016). Consequently, the court explained, guidelines' limitations on departures may still apply to the determinate part of consecutive sentences, in part because, under the 1993 amendments to ORS 161.737(2) and the concurrently enacted amendment to OAR 213-0008-007(3), "the preclusion of the application of 'any guidelines rule establishing limitations on the duration of departures' pertains only to the 'indeterminate' component of a dangerous offender sentence." *Id.* at 33. Because this case does not involve consecutive sentences, our holding does not address the limitations that were at issue in *Worth*.

the timing requirements of ORS 161.735. As the majority explains, and I agree, "[n]othing in the text of the statute suggests that a court can sentence a defendant as a dangerous offender without considering PSI and psychological evaluation reports prepared for the case in which the court is imposing a sentence." 371 Or at 725.

However, because I agree with the majority on that point, I decline to join the majority when it then proceeds to consider the lawfulness of the 260-month determinate sentence imposed here, concluding that the issue "may arise on remand." 371 Or at 729. Our cases have been inconsistent in setting forth the criteria for when we will reach issues that are likely to arise on remand. In some cases, we have reached an issue because we concluded that it may arise on remand. *See State v. Weaver,* 367 Or 1, 33, 472 P3d 717 (2020) ("we believe it is appropriate to address two issues that may arise on remand.") In other cases, we have reached an issue because we determined it was *likely* to arise on remand. *See, e.g.*, *State v. Sperou*, 365 Or 121, 141, 442 P3d 581 (2019) (so holding). Under either standard, however, reaching an issue is clearly discretionary. The majority is perfectly within its discretion to reach the issue here. I merely exercise my discretion in the opposite direction.

For me, if the absence of a psychological report complying with the timing of ORS 161.735 is reversible error—meaning it is not harmless for purposes of Article VII (Amended), section 3, of the Oregon Constitution—it is because we have concluded that the absence of that report had some likelihood of affecting the outcome of sentencing. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) ("Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?"). If the absence of a current psychological report could affect the sentencing decision, I decline to presume that a sentencing based upon a current report will likely result in the same sentence on remand—one that raises the 260-month determinate sentence issue. That is, of course, the very essence of the statute. The legislature enacted the timing requirements of ORS 161.735 because it concluded that recent psychological

information was critical to court decisions about the imposition of a dangerous offender sentence. Implicit in the statutory structure is the legislative conclusion that recent, accurate, psychological information could, and in fact *should*, affect judicial decision making in this area. Respecting that policy choice, my discretion counsels me to decline to prognosticate on the outcome of a new sentencing.

I respectfully concur as to the ORS 161.735 issue, and therefore express no opinion as to the lawfulness of the determinate sentence.

Masih, J., joins in this concurring opinion.