No. 32 July 31, 2025 101

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

JOHN W. LOGSTON,
*Petitioner on Review.*

(CC 17CR60498) (CA A179285) (SC S070960)

En Banc

On review from the Court of Appeals.*

Argued and submitted November 14, 2024.

Joshua B. Crowther, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Timothy Sylwester, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

GARRETT, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

Duncan, J., concurred and filed an opinion.

Bushong, J., concurred and filed an opinion, in which James, and Masih, JJ., joined.

_____

* Appeal from Lake County Circuit Court, David M. Vandenberg, Judge. 331 Or App 191 (2024) (nonprecedential memorandum opinion).

**GARRETT, J.**

This criminal case requires us to decide whether a trial court, after revoking a defendant's probation, has authority to impose a term of incarceration that is consecutive to a prison sentence imposed by another court in a different criminal case involving a different victim. The trial court concluded that it had the authority to impose a consecutive sentence under those circumstances and did so. The Court of Appeals affirmed. *State v. Logston*, 331 Or App 191 (2024) (nonprecedential memorandum opinion).

On review, defendant contends that the sentencing guidelines rules that govern a trial court's revocation of probation make no provision for ordering a prison term to run consecutively to a previously imposed sentence in another case. The state does not dispute that the guidelines specifically provide no such authority, but it makes two alternative contentions. First, the guidelines authorized the trial court to proceed in accordance with ORS 137.123, which generally sets out the circumstances in which consecutive sentences are allowed and specifically permits them for crimes against different victims. Second, and in all events, the trial court's action was authorized under Article I, section 44(1)(b), of the Oregon Constitution, which states that "[n]o law shall limit a court's authority to sentence a criminal defendant consecutively for crimes against different victims."

The parties' arguments thus implicate both statutory and constitutional questions. Ordinarily, we would address the statutory arguments first. *See, e.g.*, *Rico-Villalobos v. Giusto*, 339 Or 197, 205, 118 P3d 246 (2005) ("[I]f statutory sources of law provide a complete answer to [a] legal question that a case presents, we ordinarily decide the case on that basis, rather than turning to constitutional provisions."); *see also State v. Turnidge (S059156)*, 359 Or 507, 515 n 3, 373 P3d 138 (2016), *cert den*, 580 US 1021 (2017) ("That is a prudential rule, however, and it is not appropriate in every case.").

We choose a different approach in this case, because we conclude, as did the Court of Appeals, that the constitutional question is resolved by this court's decision in *State*

*v. Lane*, 357 Or 619, 355 P3d 914 (2015). In *Lane*, this court held that Article I, section 44(1)(b), superseded the sentencing guidelines to the extent that they would have prevented a trial court from imposing consecutive sentences as a probation revocation sanction in a case with multiple victims. *Id.* at 638-39. The present case differs only in that the trial court ordered a sentence to run consecutively to one imposed by a different court in a different case. As we will explain, that factual difference provides no cognizable basis on which to distinguish *Lane*. Accordingly, we affirm the decision of the Court of Appeals and the judgment of the trial court.

## I.  BACKGROUND

The facts are procedural, undisputed, and taken from the trial court record and the parties' arguments on review. Defendant pleaded guilty in Lake County Circuit Court to charges of attempted possession of heroin and unlawful use of a vehicle (UUV) belonging to a named victim, Lindsey. Under the sentencing guidelines, the presumptive sentence for the UUV offense was a prison sentence, but the trial court imposed a departure sentence of 24 months' supervised probation in accordance with the terms of the plea agreement.[1] That agreement and the judgment that the trial court subsequently entered after accepting defendant's plea included defendant's stipulation that he would serve an 18-month prison term if the court ever revoked his probation.

While he was on probation, defendant was involved in a serious automobile accident in Jefferson County, for which a grand jury indicted him on two counts of second-degree assault, one count of third-degree assault, two counts of failure to perform the duties of a driver (FPDD) when a person is injured, and one count of felony fleeing or attempting to elude a police officer. The occupants of the other vehicle involved in the accident were two individuals named Meriwether. Pursuant to a plea agreement, defendant pleaded guilty to the two FPDD counts, and the Jefferson County Circuit Court dismissed the other charges. That

---

[1] The trial court imposed a concurrent 18-month sentence of probation on the attempted possession of heroin charge, which was the presumptive sentence under the sentencing guidelines for that charge.

court sentenced defendant to serve 45 months in prison on one FPDD count and 30 months in prison on the other, with the sentences to run consecutively to each other, for a total sentence of 75 months in prison.

Based in part on the Jefferson County convictions, the Lake County court then revoked defendant's probation in the UUV case and imposed the 18-month term of imprisonment that had been part of the original plea agreement and judgment.[2] The state asked the court to make that term consecutive to the Jefferson County prison sentences, citing ORS 137.123(2) (court may impose a consecutive sentence "if the defendant previously was sentenced by any other court within the United States to a sentence which the defendant has not yet completed"). Defendant objected, contending that the statute and sentencing guidelines rules, as construed by this court in *State v. Rusen*, 369 Or 677, 509 P3d 628 (2022), precluded the trial court from imposing consecutive sentences.

The trial court disagreed with defendant and imposed the 18-month term of incarceration consecutive to the Jefferson County sentences. Defendant appealed. The Court of Appeals affirmed in a nonprecedential *per curiam* opinion, summarily citing this court's decision in *Lane. Logston*, 331 Or App at 191. We allowed defendant's petition for review.

## II.   DISCUSSION

A.  *Article I, section 44, of the Oregon Constitution* and State v. Lane

Article I, section 44, was added to the Oregon Constitution in 1999 by the voters' passage of Ballot Measure 74 (1999), upon referral from the legislature. The text provides, in part:

"(1)(a)  A term of imprisonment imposed by a judge in open court may not be set aside or otherwise not carried out, except as authorized by the sentencing court or through the subsequent exercise of:

---

[2] The Lake County supplemental probation revocation judgment also revoked defendant's concurrent probation on the attempted possession of heroin charge and imposed a 90-day term of incarceration concurrent to the 18-month sentence on the UUV charge.

"(A)   The power of the Governor to grant reprieves, commutations and pardons; or

"(B)   Judicial authority to grant appellate or post-conviction relief.

"*(b)   No law shall limit a court's authority to sentence a criminal defendant consecutively for crimes against different victims.*"

(Emphasis added.)

In *Lane*, the defendant had argued that Article I, section 44(1)(b), which refers to a court's authority to "sentence," was inapplicable to a trial court's imposition of a probation revocation "sanction," which the defendant argued was legally distinct from a "sentence." 357 Or at 625. According to the defendant, Oregon statutes and regulations revealed an unambiguous distinction between imposing a sentence for a crime and imposing a sanction upon the revocation of probation. *Id.* at 627-28.

In addressing the defendant's arguments, we examined the historical context of Article I, section 44(1)(b), including the statutes and regulations that existed in 1999. *Id.* at 627. Contrary to the defendant's arguments, we did not "find such a clear distinction in the relevant statutes and regulations." *Id.* at 628. Instead, we noted that "a number of statutes describe the penalties for a probation violation as a 'sanction,'" *id.*, but "other statutes and rules * * * refer to the imposition of a sanction for probation violations as 'sentencing,'" *id.* at 629. Thus, we thought that the voters who adopted Article I, section 44(1)(b), would not have understood that there was "a well-established and 'unambiguous' distinction between imposing probation revocation sanctions and sentencing." *Id.* at 631. Rather, "the text in context along with its enactment history reveal[ed] that the voters most likely understood that the prohibition in Article I, section 44(1)(b)—that no law may limit a court's authority to impose consecutive sentences for crimes against multiple victims—applies to the imposition of probation violation sanctions." *Id.* at 638.

We went on to explain:

"In reaching that conclusion, we emphasize that Article I, section 44(1)(b), does not necessarily *require* the imposition of consecutive sentences when there are multiple victims. By its terms it forecloses any other law from *limiting* a court's authority to impose such sentencing where there are multiple victims.

"In this case, because OAR 213-012-0040(2)(a) [(the same sentencing guidelines rule on which defendant relies in this case)] limited the trial court's authority to sentence defendant consecutively for his crimes against different victims, Article I, section 44(1)(b), invalidated it. The trial court thus did not err in concluding that it has authority to impose consecutive sentences."

*Id.* at 638-39 (emphases in original). We will discuss *Lane*'s reasoning in greater detail below, in addressing defendant's arguments on review.

B.  *Analysis*

Defendant contends that, upon revoking his probation, the Lake County court had no authority to impose a term of incarceration that was consecutive to the Jefferson County sentences. That argument proceeds in several steps. First, defendant observes that, as this court explained in *Rusen*, 369 Or 677, Oregon's sentencing scheme contemplates two distinct pathways for imposing a term of imprisonment: a *sentence* that is imposed when a person is convicted of a crime, or a *sanction* that is imposed upon revocation of probation pursuant to ORS 137.545(5)(b). This case concerns the second pathway.

Second, defendant contends, a probation revocation *sanction* under ORS 137.545(5)(b) is governed by the sentencing guidelines rules, which have the force of statute. *See State v. Langdon*, 330 Or 72, 74, 999 P2d 1127 (2000) ("Although the sentencing guidelines were created as administrative rules, the legislature approved them in 1989, giving them the authority of statutory law." (Citing Or Laws 1989, ch 790, § 87.)).

Third, defendant continues, the sentencing guidelines provide for a consecutive prison term as a probation revocation sanction in only one circumstance: where a trial

court revokes *multiple* terms of probationary supervision based on *multiple* violations. OAR 213-012-0040(2)(b).

Fourth, defendant concludes, because the trial court in this case revoked only a single term of supervision based on defendant's single violation, OAR 213-012-0040(2)(b) was inapplicable to his probation revocation proceeding, and no other rule allowed the trial court to order his incarceration sanction to run consecutively to a prison sentence that he was serving in a different case.

In sum, defendant argues that the sentencing guidelines provide the exclusive source of authority governing the trial court's revocation of defendant's probation and that, because they make no provision for a sentence to run consecutively to an existing sentence in another case, the court lacked authority to order a consecutive sentence.

The state disagrees with defendant's view of the relevant statutes and sentencing guidelines, and it contends that *Rusen* should essentially be limited to its facts. But the state further argues that those arguments are beside the point because, to the extent that any statute or guideline prevented the trial court from ordering a consecutive sentence here, that law is trumped by Article I, section 44, of the Oregon Constitution, as construed by this court in *Lane*. We agree with the state that *Lane* substantially resolves this case, with the benefit of additional explanation provided below.

In *Lane*, as noted above, the defendant had argued that Article I, section 44(1)(b), was inapplicable to his probation revocation proceeding because it addressed only a court's authority to impose a "sentence" and not the authority to impose a "sanction" for revocation of probation. 357 Or at 625. We rejected that argument, concluding that the provision "applies to the imposition of probation violation sanctions." *Id.* at 638. And, as noted above, we concluded by explaining that, "because OAR 213-012-0040(2)(a) limited the trial court's authority to sentence [the] defendant consecutively for his crimes against different victims, Article I, section 44(1)(b), invalidated it. The trial court thus did not err in concluding that it has authority to impose consecutive sentences." *Id.* at 639.

Two principles follow directly from *Lane*. First, a probation revocation sanction is a "sentence" for purposes of Article I, section 44(1)(b); thus, under that provision, "no law" can limit the authority of a court, having revoked probation, to impose a consecutive term of incarceration "where there are multiple victims." 357 Or at 638. Second, to the extent that OAR 213-012-0040(2) would restrict a court's authority to impose a consecutive term, it yields to Article I, section 44(1)(b), if there are multiple victims.

In this case, the Lake County court revoked defendant's probation for the UUV offense, for which Lindsey was the victim. Defendant was serving an existing term of incarceration for his convictions in the Jefferson County case involving the Meriwethers. Under Article I, section 44(1)(b), as construed in *Lane*, because defendant's offenses involved multiple victims, "no law" could limit the Lake County court's authority to impose a prison term consecutive to the term defendant was already serving.[3]

In arguing to the contrary, defendant contends that Article I, section 44(1)(b), prohibits only laws *limiting* a trial court's existing authority; as worded, that provision does not purport to *grant* authority to a court to impose consecutive sentences. As defendant puts it, "[t]he provision presupposes a scenario where the court has been given authority to impose consecutive sentences and limits the legislature's authority to roll back that authority when there are multiple victims." Defendant bases that argument on the premise that the legislature must provide a positive grant of authority for a court to punish a criminal defendant. *See, e.g., State v. Leathers*, 271 Or 236, 240, 531 P2d 901 (1975) ("A sentence must be in

---

[3] The state contends that consecutive sentences are permitted under Article I, section 44(1)(b), if an individual is the victim of one offense and "the state" is the victim of another offense. In support, the state relies on Article I, section 44(3) ("As used in this section, 'victim' means any person determined by the prosecuting attorney to have suffered direct financial, psychological or physical harm as a result of a crime and, in the case of a victim who is a minor, the legal guardian of the minor. In the event no person has been determined to be a victim of the crime, the people of Oregon, represented by the prosecuting attorney, are considered to be the victims."). However, as we have noted, defendant's offenses involved different individual victims. Nor does defendant dispute that his convictions involved separate victims for purposes of Article I, section 44(1)(b). Accordingly, it is unnecessary to decide whether the state may also be a separate victim for purposes of Article I, section 44(1)(b).

conformity with the governing statute; any non-conforming sentence is void for lack of authority and thus totally without legal effect."). Here, defendant reasons, no legislative grant of authority allows a trial court to impose, as a probation revocation sanction, a term of imprisonment consecutively to a sentence in another case, so Article I, section 44(1)(b), is inapplicable. The state disagrees with that argument, reasoning that *Lane* establishes that the Lake County court's order was properly grounded in either its inherent authority, Article I, section 44(1)(b), or both.

The fundamental problem with defendant's argument is that it is inconsistent with this court's analysis in *Lane*. In that case, this court explained that, because OAR 213-012-0040(2)(a) "limited the trial court's authority to sentence [the] defendant consecutively for his crimes against different victims," it was "invalidated" by Article I, section 44(1)(b). 357 Or at 639. It followed that the trial court "*ha[d] authority* to impose consecutive sentences." *Id.* (emphasis added). This court's conclusion that the trial court in *Lane* "ha[d] authority" followed directly from our explanation that Article I, section 44(1)(b), "invalidated" any law purporting to "limit" such authority. We saw no need to go further, as defendant would have us do here, to determine whether some *other* statute or guidelines rule provided an express grant of authority to impose consecutive sentences for offenses involving multiple victims.[4]

We acknowledge defendant's argument that, in the most literal sense, Article I, section 44(1)(b), does not seem to actively confer authority so much as it prohibits laws that "limit" a court's existing authority. But this court in *Lane* was equally aware of that premise, yet it concluded that the trial court "has authority" to impose a consecutive sentence, despite identifying no positive grant of legislative authority that covered the factual circumstances in that case. Defendant has not argued that *Lane*'s reasoning

---

[4] Defendant seeks to distinguish *Lane* by arguing that this court, in that case, located "existing authority under the guidelines to impose multiple revocation sanctions consecutively" and that, because such authority existed, Article I, section 44(1)(b), invalidated any statute or rule that restricted it. But defendant does not further explain that contention, and, as we have explained, *Lane* did *not* identify any positive source of authority, either in statute or in the guidelines, for imposing consecutive sentences.

was incorrect or incomplete. In that case, this court seemingly understood Article I, section 44(1)(b), as a recognition or declaration by the voters that courts *have* the authority, which the legislature may not limit, to impose consecutive sentences for crimes involving multiple victims. The failure to phrase that constitutional provision more explicitly as an affirmative grant was no impediment to our conclusion. As we explain below, the phrasing may simply reflect the historical understanding that, as a matter of inherent authority, courts possessed the discretion to choose between concurrent and consecutive sentences when a defendant committed legally distinct offenses. *Lane* did not discuss that history but is consistent with it. We now take this opportunity to make clear what was implicit in *Lane* and, we think, necessary to this court's holding in that case.

As the United States Supreme Court has explained, the common-law rule, still followed by a majority of states, was to "entrust to judges' unfettered discretion the decision whether sentences for discrete offenses shall be served consecutively or concurrently." *Oregon v. Ice*, 555 US 160, 163, 129 S Ct 711, 172 L Ed 2d 517 (2009); *see also id.* at 168-69 (citing Arthur W. Campbell, *Law of Sentencing* § 9:22, 425 (3d ed 2004) ("Firmly rooted in common law is the principle that the selection of either concurrent or consecutive sentences rests within the discretion of sentencing judges.")); *Criminal Law*, 21A Am Jur 2d § 808, 23 (2016) ("It has been held that a court has power derived from the common law to impose cumulative or consecutive sentences ***. *** [U]nless there is a statute to the contrary, it is within the trial court's sound discretion to determine whether a sentence should run concurrently with or consecutively to another sentence[.]").

Older Oregon cases reflect that historical understanding. In *State v. Jones*, 250 Or 59, 440 P2d 371 (1968), this court considered the trial court's imposition of a sentence consecutive to another sentence imposed in an earlier case. At the time, no statute specifically authorized the imposition of consecutive sentences. *Former* ORS 137.160 (1959) had previously done so, but, in 1961, the legislature repealed that statute, Or Laws 1961, ch 520, § 1. *Jones*, 250 Or at 60. That action had been taken in response to a

report from an interim legislative committee that had rec-
ommended repealing the statute (because of a concern about
some of its wording) and replacing it with a different one
that still authorized either concurrent or consecutive sen-
tences. *Id.* at 60-61. Although the legislature repealed the
existing statute, it did not enact a replacement. *Id.* at 61.
This court did not view that omission as a barrier to the
imposition of a consecutive sentence:

> "[W]e feel certain that the legislature was aware that
> permissive legislation was not necessary. It is an inher-
> ent power of the court to impose sentences, including the
> choice of concurrent or consecutive terms when the occa-
> sion demands it. Accordingly, the legislature would have
> recognized that no legislation was needed to authorize the
> courts to exercise a power already in existence to impose
> either consecutive or concurrent sentences."

*Id.* (citations omitted); *see also Trahan v. Cupp*, 8 Or App
466, 468-69, 493 P2d 1391 (1972) (citing *Jones* and other
cases for the proposition that "trial courts in Oregon have
inherent discretionary power to impose concurrent or con-
secutive sentences").

Some states, including Oregon, have departed from
the common-law model by statutorily curtailing a court's
discretion to impose consecutive sentences. *Ice*, 555 US at
163-64 (describing various state approaches, including
Oregon's). In 1986, Oregon voters enacted what is now ORS
137.123, which provides that sentences are presumed to be
concurrent, unless the judgment expressly provides other-
wise, and that consecutive sentences may be imposed only
as provided in that statute. ORS 137.123(1); *see State v. Soto*,
372 Or 561, 584-86, 551 P3d 893 (2024) (describing history
of statute's enactment). That statute further specifies that
consecutive sentences are permitted when a defendant is
"simultaneously sentenced for criminal offenses that do not
arise from the same continuous and uninterrupted course of
conduct, or if the defendant previously was sentenced by any
other court within the United States to a sentence which
the defendant has not yet completed," ORS 137.123(2), and
that a consecutive sentence is *required* when a defendant
is sentenced while incarcerated after being sentenced for a
previous crime, ORS 137.123(3).

ORS 137.123 also addresses what sentencing courts may do when a defendant is convicted of more than one offense arising from a "continuous and uninterrupted course of conduct." In such cases, sentences "shall be concurrent," ORS 137.123(4), unless the court makes one of the findings described in subsection (5). That subsection provides:

> "The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

> "(a)  That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

> "(b)  The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim *or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct*."

(Emphasis added.) Thus, the statute provides that, even where multiple convictions arise from a continuous and uninterrupted course of conduct, such that concurrent sentences would ordinarily be required, consecutive sentences are still authorized where multiple victims were involved. That policy choice is consistent with the common-law rule that offenses against different victims were considered legally distinct even when arising from the same act, a rule reflected elsewhere in Oregon's criminal statutes. *See, e.g.*, ORS 131.505(3) ("When the same conduct or criminal episode, though violating only one statutory provision, results in death, injury, loss or other consequences of two or more victims, and the result is an element of the offense defined, there are as many offenses as there are victims.").

In sum, Oregon law has historically recognized the common-law authority of a trial court to choose between concurrent and consecutive sentences for legally distinct

offenses. That inherent authority can be and has been circumscribed by legislative action in Oregon and in other states, as recounted in *Ice*. In Oregon, ORS 137.123 generally lays out the circumstances in which consecutive sentences may be imposed. Those include situations in which a defendant's offense or offenses affected multiple victims. ORS 137.123(5)(b).

With that context, we return to the 1999 passage of Measure 74, which added Article I, section 44(1)(b), to the Oregon Constitution. As we discussed in *Lane*, that provision appears to have had its origins as a reaction in part to OAR 213-012-0040(2), the rule discussed above that does not allow a trial court to impose consecutive sentences as a probation revocation sanction unless the defendant is serving multiple terms of supervision and has committed multiple violations. *Lane*, 357 Or at 635. That history helps explain why the text of what became Article I, section 44(1)(b), was phrased in the negative, as a prohibition on legislative *restriction* of a court's authority to impose consecutive sentences where there are multiple victims. Defendant may be correct that the text could more clearly reflect an intention to *confer* authority. But the drafters' decision not to phrase the text in that manner is readily understandable against the historical backdrop discussed above. Although the relevant adoption history is "scant," as we said in *Lane*, it seems likely that the drafters would not have regarded themselves as conferring authority so much as undoing a legislative incursion on the inherent authority that courts historically possessed, as recognized by this court in *Jones*. The drafters also would have been aware of ORS 137.123(5), which, as discussed above, *does* specifically authorize consecutive sentences for multiple victims. That provides additional reason to think that the drafters would not have thought it necessary to confer authority so much as to make it clear that legislative restrictions on such authority were prohibited.

Defendant acknowledges *Jones* but argues that it should be limited to its "facts"; he contends that, "if the legislature abolished the Oregon Revised Code or repealed those statutes or rules covering a specific area, this court's

inherent authority might fill in the gaps." But that is essentially what Article I, section 44(1)(b), as construed in *Lane*, accomplished. By adopting that provision, voters declared that existing and prospective legislative restrictions on a court's authority to impose consecutive sentences for multiple victims were prohibited. The effect of constitutionally prohibiting such restrictions, understood in historical context, was to restore the authority that courts possessed before the legislature curtailed it.

## III.   CONCLUSION

In sum, Article I, section 44(1)(b), superseded the applicable sentencing guidelines rule, OAR 213-012-0040(2)(b), to the extent that that rule prevented imposition of a consecutive sentence in defendant's Lake County probation revocation proceeding, when he also had been sentenced in Jefferson County for crimes involving other victims. The Lake County court therefore did not err when it imposed a term of incarceration in defendant's probation revocation proceeding to run consecutively to his Jefferson County sentences.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**DUNCAN, J.,** concurring.

The issue in this case is whether the trial court erred when it ordered defendant to serve his probation revocation sanction in a Lake County case consecutively to a sentence that defendant had just received for a conviction in a Jefferson County case. Defendant has argued that the trial court did not have authority to impose the consecutive sanction. In response, the state has argued that the trial court had authority to impose the consecutive sanction under both a statutory provision, ORS 137.123, and a constitutional provision, Article I, section 44(1)(b), of the Oregon Constitution.

The majority concludes that the trial court had constitutional authority to impose the consecutive sanction under Article I, section 44(1)(b). 374 Or at 109. The majority does not address whether the trial court had statutory

authority, explaining that, even though "[o]rdinarily, [this court] would address the statutory arguments first," it is appropriate to resolve this case based on the constitution, because "the constitutional question is resolved by this court's decision in *State v. Lane*, 357 Or 619, 355 P3d 914 (2015)." 374 Or at 103-04. I agree with the majority's conclusion that the trial court had the authority to impose the consecutive sanction under Article I, section 44(1)(b). I also agree with the majority's conclusion that it is appropriate to resolve this case based on the constitution. I write separately only to address Justice Bushong's concurrence.

His concurrence takes the position that we should resolve this case based on the state's statutory argument and that we should hold that ORS 137.123 applies directly to probation revocation sanctions. 374 Or at 127, 140-42 (Bushong, J., concurring). As I will explain in greater detail below, this court has already rejected the position that ORS 137.123 applies directly to probation revocation sanctions. We did so in *State v. Rusen*, 369 Or 677, 509 P3d 628 (2022), relying on a statute, ORS 137.545(5)(b), which provides that, when a trial court revokes a defendant's probation for a crime that is subject to the felony sentencing guidelines, the court may impose a sanction "as provided by" the guidelines rules. Specifically, ORS 137.545(5)(b) provides:

> "For defendants sentenced for felonies committed on or after November 1, 1989 ['guidelines crimes'], the court that imposed the probationary sentence may revoke probation supervision and *impose a sanction as provided by rules of the Oregon Criminal Justice Commission ['guidelines rules'].*"

(Emphasis added.) Given the plain text of ORS 137.545(5)(b), we held that, for guidelines crimes, the only way that ORS 137.123 could apply to probation revocation sanctions would be if a guidelines rule that applied to such sanctions incorporated it. *Rusen*, 369 Or at 700-01. In other words, we held that the only way that ORS 137.123 could apply to such sanctions is if it applied indirectly, that is, through a guidelines rule. *Id*. We then reviewed the guidelines rules and concluded that the rule that governs probation revocation sanctions is OAR 213-012-0040, which does not incorporate

ORS 137.123. *Id*. at 703-04. Therefore, we rejected the state's argument that ORS 137.123 applies to probation revocation sanctions, either directly or indirectly.

Despite ORS 137.545(5)(b) and *Rusen*, Justice Bushong's concurrence would have this court hold that ORS 137.123 applies directly to probation revocation sanctions. 374 Or at 127, 140-42 (Bushong, J., concurring). As his concurrence acknowledges, doing so would require us to overrule *Rusen*'s holding that ORS 137.123 does not apply directly to probation revocation sanctions. *Id*. But no party in this case has asked this court to overrule that holding, much less undertaken the effort necessary to establish that we should overrule it. *See Farmers Ins. Co. v. Mowry*, 350 Or 686, 692, 261 P3d 1 (2011) ("[T]he principle of *stare decisis* dictates that this court should assume that its fully considered prior cases are correctly decided. Put another way, the principle of *stare decisis* means that the party seeking to change a precedent must assume responsibility for affirmatively persuading us that we should abandon that precedent." (Internal quotation marks omitted.)).

I write separately to explain the statutes that govern consecutive sentences and probation revocation sanctions, the sentencing guidelines, and *Rusen*. As I will explain, I believe that *Rusen* correctly held that ORS 137.123 does not apply directly to probation revocation sanctions, and, even if one were to disagree with *Rusen*, the requirements for overruling it have not been met.

I begin with a comment about terminology. This case involves custody imposed as a consequence of the revocation of defendant's probation. As this court has observed, sometimes such custody is referred to as a "sanction" and sometimes it is referred to as a "sentence." *Lane*, 357 Or at 628-32. There are many laws that relate to custody, including constitutional provisions, statutes, and administrative rules. Those laws can relate to custody imposed immediately upon conviction, custody imposed following revocation of probation, or both. The laws are not always precise about the type or types of custody they relate to. Many of the laws were created at different times, for different purposes,

and by different entities. Consequently, when determining whether, for example, the term "sentence" in a particular law was intended to encompass custody imposed upon the revocation of a defendant's probation, we must ascertain the intent of the entity that created the particular law, be it the voters, the legislature, or an administrative agency. *See, e.g.*, *Lane*, 357 Or at 624-39 (applying approach). In doing so, we must focus on the text of the particular law, in context, and the law's history. *Id*. We cannot assume that all references to a "sentence" encompass custody imposed upon the revocation of a defendant's probation.

In this opinion, to be clear about the type of custody I am referring to, I use the term "probation revocation sanction" to refer to custody imposed upon the revocation of a defendant's probation. I use the term "initial sentence" to refer to custody imposed immediately following a defendant's conviction.

Because this case involves a probation revocation sanction for a crime that is subject to the felony sentencing guidelines, it is important to understand how statutes that govern sentences interact with the guidelines. The guidelines were first approved by the legislature in 1989 and apply to felonies committed on or after November 1, 1989. Or Laws 1989, ch 790, § 6(1), *codified as* ORS 137.010(1) (1989) (stating applicability of guidelines). The guidelines do not apply to felonies committed before that date or to misdemeanors. Consequently, even with the adoption of the guidelines, there was a need to retain preguidelines sentencing statutes. As discussed below, the guidelines drafters were aware of those statutes, and, when they wanted to incorporate them into the guidelines, they did so.

As mentioned, Justice Bushong's concurrence would hold that ORS 137.123 applies directly to probation revocation sanctions for guidelines crimes. 374 Or at 127, 140-42 (Bushong, J., concurring). ORS 137.123 is a preguidelines statute; it was adopted by initiative in 1986, three years before the sentencing guidelines. *See State v. Soto*, 372 Or 561, 584, 551 P3d 893 (2024) (discussing history of ORS 137.123). Under ORS 137.123, concurrent sentences are the

default. ORS 137.123(1) ("The court may provide for consecutive sentences only in accordance with the provisions of this section. A sentence shall be deemed to be a concurrent term unless the judgment expressly provides for consecutive sentences."). A court can impose a consecutive sentence only in certain circumstances. ORS 137.123(2) - (4) (identifying circumstances). One of the circumstances in which a court can impose consecutive sentences is if the defendant's crimes of conviction "do not arise from the same continuous or uninterrupted course of conduct." ORS 137.123(2). But, if the defendant's crimes of conviction do arise from the same continuous and uninterrupted course of conduct, then the defendant's sentences "shall be concurrent," unless the court makes certain findings. ORS 137.123(4), (5).

When ORS 137.123 was enacted, probation itself was not a "sentence." *State v. Stevens*, 253 Or 563, 565, 456 P2d 494 (1969). Instead, a court that placed defendant on probation either (1) suspended the imposition of the defendant's sentence or (2) imposed a sentence but suspended its execution. *Id*. If the defendant's probation was later revoked, the defendant would begin serving their "sentence." *Id*.

In 1989, the legislature approved the sentencing guidelines, through the enactment of House Bill (HB) 2250. Or Laws 1989, ch 790. The sentencing guidelines were the product of a multiyear process and resulted in a "significant change in Oregon's criminal justice system." *Oregon Sentencing Guidelines Implementation Manual* 1 (1989) (Implementation Manual). As mentioned, the guidelines apply only to felonies committed on or after November 1, 1989. For those crimes, the guidelines establish presumptive sentences, including presumptive probation sentences and presumptive prison sentences. The guidelines changed the nature of probation; they made probation itself a sentence. As the Implementation Manual explains, "[u]nder the guidelines system, a sentence of probation is the sentence imposed by the sentencing judge." *Implementation Manual* at 93.

The guidelines rules include rules governing probation sentences, violations, sanctions, and revocations. Some of those rules limit the length of probationary terms and the amount of custody units that can be imposed initially

and for violations. *See, e.g.*, OAR 213-005-0007 (presumptive probation sentences); OAR 213-005-0008 (duration of probation); OAR 213-010-0001 (revocation); OAR 213-010-0002 (sanctions). Another governs when probation revocation sanctions must be concurrent and when they can be consecutive. OAR 213-012-0040.

The guidelines drafters were aware of existing sentencing statutes. Indeed, the bill that resulted in the adoption of the guidelines also amended existing statutes. Among other things, that bill amended the statute that is now codified as ORS 137.545(5)(b) to provide that, "[f]or defendants sentenced for crimes committed on or after November 1, 1989, the court that imposed the probationary sentence shall revoke probation supervision and impose a sanction as provided by rules of the State Sentencing Guidelines Board." Or Laws 1989, ch 790, § 17(4)(b) (amending *former* ORS 137.550 (1987), *renumbered as* ORS 137.545 (1999)).[1]

When the guidelines drafters wanted existing statutes to apply instead of the guidelines, they stated so in the guidelines themselves. *See, e.g.*, OAR 213-004-0003(1) (stating that the guidelines do not include a crime seriousness ranking for aggravated murder because the sentence for that crime is "set by statute *** (ORS 163.095-163.105)"). Similarly, when they wanted existing statutes to apply in addition to the guidelines, they either stated so in the guidelines or amended the existing statutes to integrate them into the guidelines system. *See, e.g.*, OAR 213-009-0003 ("In addition to the presumptive or departure sentence, the sentencing judge may impose any restitution, fine, fee or other monetary payment authorized or required by law."); *see also Implementation Manual* at 151-52 (explaining that, "[t]o ensure that [the dangerous offender] statute is not used in a manner inconsistent with the general purposes and principles of the guidelines system, the legislature amended the dangerous offender statutes to integrate it into the guidelines system").

---

[1] As explained below, ORS 137.545(5)(b) was later amended to read as it does today. 374 Or at 122 (Duncan, J., concurring). Specifically, "shall" was changed to "may" to make it clear that, if a trial court found that a defendant had violated a condition of probation, the trial court was not required to revoke the probation. *See id.*

After the guidelines were created, a question arose regarding whether ORS 137.123—which, as mentioned, predates the guidelines—applies to probation revocation sanctions for guidelines crimes. This court addressed that question in *Rusen* and held that ORS 137.123 does not apply to such sanctions.

In *Rusen*, the defendant pleaded no contest to four counts of second-degree sexual abuse involving the same victim. 369 Or at 680. The plea agreement specified that the four counts "were committed on four different dates—*i.e.*, not 'the same continuous and uninterrupted course of conduct,' ORS 137.123(2)." *Rusen*, 369 Or at 680. The crimes were subject to the guidelines, and the trial court imposed four probationary sentences. *Id*. at 680-81. During the defendant's probation term, the state alleged that the defendant had violated a condition of his probation. *Id*. at 681. The defendant admitted to a single violation. *Id*. The state asked the trial court to impose consecutive revocation sanctions. *Id*. The defendant argued against consecutive sanctions, relying on OAR 213-012-0040(2)(a), which provides that, "[i]f more than one term of probationary supervision is revoked for a single supervision violation, the sentencing judge shall impose the incarceration sanctions concurrently." *Rusen*, 369 Or at 681. The trial court revoked all four of the defendant's probations and imposed four consecutive revocation sanctions. *Id*. at 682.

The defendant appealed, and the Court of Appeals reversed, holding that the trial court had erred in imposing consecutive probation revocation sanctions for a single probation violation. *State v. Rusen*, 307 Or App 759, 760, 479 P3d 318 (2020). In doing so, the Court of Appeals "rejected the state's argument that the trial court had authority to impose consecutive sanctions under ORS 137.123(2)," which, as noted, allows for consecutive sentences for crimes that "do not arise from the same continuous or uninterrupted course of conduct." *Rusen*, 369 Or at 682 (describing Court of Appeals decision). On the state's petition, we allowed review. *Id*.

On review, the state argued that ORS 137.123 applies directly to probation revocation sanctions for

guidelines crimes. *Id*. at 698-99. We rejected that argument based on ORS 137.545(5)(b). *Id*. at 699-701. Again, that provision—which was enacted as part of the bill that created the sentencing guidelines—states that, for defendants sentenced for guidelines crimes, "the court that imposed the probationary sentence may revoke probation supervision and impose a sanction as provided by rules of the Oregon Criminal Justice Commission ['guidelines rules']." ORS 137.545(5)(b). The state argued that ORS 137.545(5)(b) should be read "to provide that, upon finding a probation violation, the trial court may or may not revoke probation, and, if the trial court revokes probation, then the trial court may or may not impose a sanction as provided by the sentencing guidelines rules." *Rusen*, 369 Or at 699. But, based on the text, context, and legislative history of ORS 137.545(5)(b), we rejected the state's reading. *Id*. at 699-701. We explained that, as originally enacted in 1989, the provision stated that a court "shall" revoke probation and impose a sanction as provided by the guidelines, but the term "shall" was changed to "may" in 1991 "to ensure that judges retained their presentencing guidelines discretion regarding whether to revoke probation, reflecting a recognition that not all probation violations warrant revocation." *Id*. at 700. We further explained that that change was not intended to alter the requirement that trial courts impose probation revocation sanctions as provided by the guidelines. *Id*. That is, it was not intended "to provide trial courts with authority to impose sanctions outside the sentencing guidelines rules in the event that they exercised discretion and revoked probation." *Id*. Consequently, we concluded that ORS 137.545(5)(b) requires trial courts to impose probation revocation sanctions under the guidelines rules only. *Id*. at 700-01. We summarized:

> "[U]nder ORS 137.545(5)(b), upon finding a probation violation, a trial court may decide to revoke probation and impose a sanction as provided by the sentencing guidelines rules, or the trial court may decide to not revoke probation and not impose a sanction as provided by the sentencing guidelines rules. *But the provision does not authorize a trial court to revoke probation and impose a sanction other than those provided by the sentencing guidelines rules.*"

*Id.* (emphasis added); *see also id.* at 697 (stating that, for guidelines crimes, "a trial court imposing probation revocation sanctions is directed to the guidelines rules by ORS 137.545(5)(b)"); *id.* at 698 n 8 (rejecting the state's argument that ORS 137.123(2) directly applies to probation revocation sanctions, stating, "as we just explained, the imposition of probation revocation sanctions is governed by the sentencing rules[;] [s]o, to the extent that ORS 137.123(2) applies at all, it would apply only through OAR 213-012-0010," which expressly incorporates ORS 137.123).

Thus, in *Rusen,* this court clearly held that ORS 137.545(5)(b) requires trial courts to impose sanctions under the guidelines. 369 Or at 700-01. Because of that holding, we proceeded to determine whether any guidelines rule authorized the trial court to impose consecutive probation revocation sanctions as it had. *Id.* at 701-04.[2]

---

[2] It is worth noting that this court's conclusion in *Rusen* that ORS 137.123 does not apply directly to probation revocation sanctions for guidelines crimes is consistent with an argument that the state made, and the Court of Appeals accepted, in *State v. Newell*, 238 Or App 385, 242 P3d 709 (2010). In *Newell*, the defendant pleaded guilty to four counts of encouraging child sexual abuse in the second degree, based on his possession of child pornography. *Id*. at 387. The trial court imposed four probationary sentences. *Id*. While on probation, the defendant admitted to having committed multiple probation violations. *Id*. The trial court revoked all four of the defendant's probations and imposed consecutive probation revocation sanctions over the defendant's objection that the court could not impose consecutive sanctions without making the findings required by ORS 137.123(5), which applies to consecutive sentences for crimes arising out of a continuous and uninterrupted course of conduct. *Id*. at 387-88.

The defendant appealed, renewing his argument that ORS 137.123 applies to probation revocation sanctions for guidelines crimes. *Id*. The state disagreed, arguing that ORS 137.123 "applies only to the imposition of sentences and not to the imposition of probation revocation sanctions." *Id*. at 392. The Court of Appeals agreed with the state. *Id.* at 389 (concluding that ORS 137.123 "has no application in the context of probation violation proceedings").

In conducting its legal analysis, the Court of Appeals examined statutes and guidelines rules. *Id.* at 389-94. It noted that ORS 137.545(5)(b) states that a court that revokes probation may impose a sanction "as provided by" the sentencing guidelines. *Id.* at 392. It then observed that the guidelines include rules that relate to probation revocation sanctions, specifically, OAR 213-010-0002, which concerns the length of sanctions, and OAR 213-012-0040(2), which concerns concurrent and consecutive probation revocation sanctions. *Id*. at 393-94. Based on those rules, the court concluded that the sentencing guidelines maintain a distinction between consecutive sentences imposed upon conviction and consecutive probation revocation sanctions. *Id.*

Continuing its analysis, the Court of Appeals looked to the legislative history of the sentencing guidelines. *Id.* at 394-95. The court noted that the commentaries to the guidelines rules relating to probation revocation sanctions show that

As mentioned, the defendant in *Rusen* argued that, because the trial court had revoked his probation based on a single violation, OAR 213-012-0040(2) required the trial court to impose concurrent sanctions. *Id*. at 698. For its part, the state argued that another rule, OAR 213-012-0010, authorized the trial court to impose consecutive sanctions because that rule expressly incorporates ORS 137.123, which authorizes consecutive sentences for crimes of conviction that do not arise from the same continuous and uninterrupted course of conduct. *Id*. To determine which rule applies, we looked to the text, context, and legislative history of both rules. *Id*. at 703-04. We observed that OAR 213-012-0040(2) expressly refers to probation revocation proceedings, but OAR 213-012-0010 does not. *Id*. at 703. We further observed that "that failure [of OAR 213-012-0010] to refer to probation revocation proceedings is particularly significant in the context of OAR 213-012-0040(2), given that both rules were adopted by the State Sentencing Guidelines Board at the same time and approved by the legislature at the same time." *Id*. In light of the text of the rules and the circumstances of their adoption and approval, we concluded

---

probation sanctions relate directly to the violations for which they are imposed, as opposed to the underlying crimes of conviction. *Id*. The court quoted the commentary to OAR 213-010-0002, which states that "'[t]he sanctions described by this rule are penalties for supervision violation and *do not directly relate to the crime of conviction.*'" *Newell*, 238 Or App at 395 (quoting *Implementation Manual* at 170 (emphasis in *Newell*)). It also quoted the commentary to OAR 213-012-0040(2), which states that the "'*prison term associated with the revocation sanction will be served concurrently or consecutively depending on the nature of the supervision violation.*'" 238 Or App at 394 (quoting *Implementation Manual* at 118 (emphasis in *Newell*)). In keeping with that understanding of probation sanctions, the court rejected the defendant's argument that ORS 137.123, which requires findings about a defendant's crimes of convictions, applies to probation sanctions. 238 Or App at 395. The court summarized:

"None of the rules or statutes cited above, and none of our case law, supports defendant's suggestion that the facts of the underlying crimes would need to be relitigated (which would necessarily need to occur were ORS 137.123 to apply in this circumstance) in order to determine the appropriate sanctions to impose for probation violations.

"Accordingly, we conclude that the trial court was correct in determining that the sole criterion for whether it could impose multiple incarceration sanctions was whether there had been multiple probation violations. OAR 213-012-0040(2)."

*Id*. at 395. Thus, since 2010, it has been established Court of Appeals law that ORS 137.123, which requires fact finding before the imposition of certain consecutive sentences, does not apply directly to probation revocation sanctions.

that the rules "should be understood as addressing different stages of sentencing." *Id.* Specifically, OAR 213-012-0010 "applies to initial sentencing immediately following the convictions," while OAR 213-012-0040(2) applies to "probation revocation proceedings." *Id.* at 703-04. In doing so, we noted that that conclusion is the same as the one that "has been applied by the Court of Appeals for decades." *Id.* at 704 (citing *State v. Stokes*, 133 Or App 355, 358, 891 P2d 13 (1995), as "interpreting OAR 213-012-0010 as governing initial sentencing and interpreting OAR 213-012-0040 as governing probation revocation").[3]

In sum, in *Rusen*, this court made two important holdings regarding probation revocation sanctions. The first is that, given ORS 137.545(5)(b), probation revocation sanctions are governed by the sentencing guidelines and, therefore, ORS 137.123 does not apply directly to them. The second is that OAR 213-012-0010 applies to initial sentencing, whereas OAR 213-012-0040(2) applies to probation revocation proceedings. Although OAR 213-012-0010 incorporates ORS 137.123, OAR 213-012-0040(2) does not. Consequently, ORS 137.123 does not apply to probation revocation proceedings indirectly.

In his concurrence, Justice Bushong states that he would overrule the first *Rusen* holding. 374 Or at 127, 140-42 (Bushong, J., concurring). He would hold that ORS 137.123 applies directly to probation revocation proceedings. *Id.* . As I understand it, he would do so based on the text, context, and legislative history of ORS 137.123. 374 Or at 140-42

---

[3] The conclusion that OAR 213-012-0010 applies to initial sentencing is also consistent with the commentary to the rule, which states that the rule "confirms that existing statutory law controls the sentencing judge's threshold choice of consecutive or concurrent sentences for multiple convictions." *Implementation Manual* at 112 (commentary to *former* OAR 253-012-010 (Sept 1, 1989), *renumbered as* OAR 213-012-0010 (Mar 8, 1996)). Attached as it is to OAR 213-012-0010, that comment makes sense because OAR 213-012-0010 expressly incorporates sentencing statutes, including ORS 137.123. And the comment itself indicates that the rule applies to a judge's "threshold" choice of consecutive or concurrent sentences, which suggests that it applies at a defendant's initial sentencing.

Notably, the comment is not attached to OAR 213-012-0040(2), which applies to probation revocation sanctions. It would not make sense if it were, because the adoption of OAR 213-012-0040(2) changed trial courts' authority to impose consecutive probation revocation sanctions by precluding consecutive probation revocation sanctions for a single probation violation.

(Bushong, J., concurring). But, as explained above, ORS 137.123 is a preguidelines statute and, when the legislature enacted the law that adopted the guidelines and amended existing statutes, it created ORS 137.545(5)(b), under which the guidelines control probation revocation sanctions.

Justice Bushong suggests that *Rusen*'s holding that ORS 137.123 does not apply directly to probation revocation sanctions was not fully considered. 374 Or at 141 (Bushong, J., concurring). But that view is contradicted by the *Rusen* opinion. As described above, in *Rusen*, the state specifically argued that ORS 137.123 applied directly to probation revocation sanctions, and this court engaged with that argument. *Rusen*, 369 Or at 697, 698 n 8, 699-701, 703-04. In doing so, this court looked to ORS 137.545(5)(b), which weighed against the state's argument. *Id*. It considered the text, context, and legislative history of ORS 137.545(5)(b) and concluded that the provision bars a trial court from imposing a probation revocation sanction "other than those provided by the sentencing guidelines rules." *Id*. at 699-701.[4]

As noted at the outset, no party in this case has asked us to overrule that holding, much less undertaken to prove that it should be overruled. For the reasons explained

---

[4] This court's conclusion in *Rusen* that ORS 137.123 does not apply directly to probation revocation sanctions was a holding of the case. It was central to the court's reasoning; without it, the court would not have had to look to the guidelines rules. Moreover, if ORS 137.123 applied directly to probation revocation proceedings as the state argued in *Rusen*, the outcome of the case would have been different. Instead of agreeing with the defendant that OAR 213-012-0040(2) precluded consecutive sanctions based on a single violation, we would have had to hold that ORS 137.123 authorized consecutive sanctions because the underlying offenses had not been part of "the same continuous and uninterrupted course of conduct." ORS 137.123(2). That is because, if both the rule and the statute applied, the statute would trump the rule. *See Newell*, 238 Or App at 391-92 ("[Although legislative approval of administrative rules] 'may be expressed in the form of a statute, *** that does not transform the [rules] themselves into statutes. It stands to reason, therefore, that, merely because the legislature in 1989 declared its approval of the sentencing guidelines by statute, it did not thereby transform the guidelines themselves into statutes. They were promulgated as administrative rules, and administrative rules they remained[.]'" (Quoting *State v. Norris*, 188 Or App 318, 343, 72 P3d 103, *rev den*, 336 Or 126 (2003).)); *see also State v. Carlton*, 361 Or 29, 39 n 7, 388 P3d 1093 (2017) (sentencing guidelines are administrative rules); *Implementation Manual* at 149 ("While the guidelines have been approved by the legislature, they retain their status as administrative rules. When those rules conflict with statutes, the statutory provisions control.").

above, I conclude that the holding is sound, as it is based on an analysis of the legislature's intent in enacting ORS 137.545(5)(b), as evidenced by the text, context, and legislative history of that statute. Therefore, I disagree with the position expressed in Justice Bushong's concurrence that this court should overrule the holding.[5]

**BUSHONG, J.,** concurring.

The majority opinion holds that Article I, section 44(1)(b), of the Oregon Constitution authorized the trial court in Lake County, after revoking defendant's probation, to impose a term of incarceration that is consecutive to the prison sentence that another court had imposed in a different criminal case in Jefferson County. I agree with the majority's holding. I write separately because, in my view, this case can and should be resolved on statutory grounds. Doing so would require us to overrule *State v. Rusen*, 369 Or 677, 509 P3d 628 (2022), in part. Although no party has asked us to do that, we should do so in this or a future case because, in my view, *Rusen* misinterpreted ORS 137.123. *See State v. McCarthy*, 369 Or 129, 144, 501 P3d 478 (2021) ("this court is willing to reconsider an earlier decision when it appears that the decision was incorrect, especially if, in making the decision, the court did not apply its usual interpretative methodology or was not presented with an important argument."). That statute, where applicable, directly authorizes consecutive sentences upon revocation of probation.

Under our traditional approach, "if statutory sources of law provide a complete answer to [a] legal question that

---

[5] According to Justice Bushong's concurrence, this court addressed the state's argument that ORS 137.123 applies directly to probation revocation sanctions only in a footnote. 374 Or at 140 (Bushong, J., concurring). A necessary premise of the state's argument was that ORS 137.123 could apply directly to probation revocation sanctions, despite ORS 137.545(5)(b). Throughout the body of the *Rusen* opinion, this court addressed that premise, ultimately rejecting it on the ground that ORS 137.545(5)(b) requires trial courts to apply the guidelines (which is why this court then had to determine whether any guidelines rule authorized the consecutive sentences at issue). *Rusen*, 369 Or at 697 ("a trial court imposing probation revocation sanctions is directed to the guidelines rules by ORS 137.545(5)(b)"); *id*. at 701 (ORS 137.545(5)(b) "does not authorize a trial court to revoke probation and impose a sanction other than those provided by the sentencing guidelines rules"); *id*. at 701-704 (analyzing OAR 213-012-0010 and OAR 213-012-0040(2)).

a case presents, we ordinarily decide the case on that basis, rather than turning to constitutional provisions." *Rico-Villalobos v. Giusto*, 339 Or 197, 205, 118 P3d 246 (2005); *see also Planned Parenthood Ass'n v. Dep't of Human Res.*, 297 Or 562, 564, 687 P2d 785 (1984) (stating that "constitutional issues should not be decided when there is an adequate statutory basis for a decision"). We will ordinarily attempt to resolve a case on statutory grounds even if the parties attempt to frame the issue in purely constitutional terms. *State ex rel Keisling v. Norblad*, 317 Or 615, 624, 860 P2d 241 (1993); *Zockert v. Fanning*, 310 Or 514, 520, 800 P2d 773 (1990).

I would adhere to that approach and decide this case on statutory grounds. I begin by explaining the statutory basis for deciding this case before turning to our prior decision in *Rusen*.

### I.    STATUTORY RESOLUTION—ORS 137.123

As noted in the majority opinion, the state contends that consecutive sentences were authorized by ORS 137.123. Deciding that issue would require the court to interpret the statute, applying our traditional methodology, focusing on text, context, and legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). I begin with the text and context.

A.  *Text and Context of ORS 137.123*

ORS 137.123 provides, in pertinent part, as follows:

"(1) *A sentence imposed by the court may be made concurrent or consecutive to any other sentence which has been previously imposed or is simultaneously imposed upon the same defendant.* The court may provide for consecutive sentences only in accordance with the provisions of this section. A sentence shall be deemed to be a concurrent term unless the judgment expressly provides for consecutive sentences.

"(2) If a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct, or *if the defendant previously was sentenced by any other court within the United States to a sentence which the defendant has not yet*

*completed, the court may impose a sentence concurrent with or consecutive to the other sentence or sentences.*"

(Emphases added.) The state relies on the emphasized portions of ORS 137.123 as the statutory authority for the trial court's decision, upon revoking defendant's probation, to impose a term of incarceration that was consecutive to the sentences that had been previously imposed by the Jefferson County Circuit Court that defendant was serving at the time of revocation.

Defendant does not dispute that the text of ORS 137.123 would authorize a consecutive sentence if the term of incarceration imposed after revoking defendant's probation was a "sentence" within the meaning of that statute. Defendant contends, however, that the only *sentence* imposed by the Lake County Circuit Court was the sentence of probation that the court originally imposed. According to defendant, incarceration following revocation of probation is a *sanction* for violating probation and not a *sentence* within the meaning of ORS 137.123, because Oregon's sentencing scheme established two distinct pathways for imposing a term of incarceration: the original sentence and a probation revocation sanction. I disagree.

The plain meaning of the word "revocation" supports the conclusion that a court imposes a new "sentence" after revoking a defendant's probation. The dictionary defines "revocation" as "an act of revoking **:** the act by which one having the right annuls something previously done * * * **:** REPEAL, REVERSAL, WITHDRAWAL. *Webster's Third New Int'l Dictionary* 1944 (unabridged ed 2002). Thus, the act of "revoking" defendant's original sentence of probation effectively "annulled" or "withdrew" the original sentence and resulted in the imposition of a new sentence. That new sentence is appealable under ORS 138.035(3) (stating that a defendant "may appeal a judgment or order * * * imposing * * * *a sentence* upon revocation of probation" (emphasis added)).[1]

---

[1] By contrast, the term "sanction" makes sense when probation is continued, not revoked, and the probationer is sanctioned for violating the terms of probation. *See* ORS 137.593(2)(c) (noting that, upon finding a violation, a court has discretion "to revoke probation or impose such other or additional sanctions" as authorized by law); ORS 137.595 (describing system of "structured, intermediate probation violation sanctions").

Other related statutes that apply to sentencing and the consequences of probation revocation do not describe two distinct pathways to incarceration.[2] Some statutes describe the penalties for a probation violation as a "sanction." *See, e.g.*, ORS 137.545(5)(b) (authorizing courts that imposed a probationary sentence for felonies committed on or after November 1, 1989, to "revoke probation supervision and impose a sanction as provided by rules of the Oregon Criminal Justice Commission"); ORS 137.593(1) (the relevant corrections agency "shall impose structured, intermediate sanctions" if the defendant violated the conditions of probation); ORS 137.593(2)(b), (c) (authorizing a court to impose "sanctions" for violating the conditions of probation); ORS 137.593(2)(d) (authorizing the court to impose a period of incarceration "as a sanction for revocation of probation"); ORS 137.595(1) (directing the Department of Corrections to establish "a system of structured, intermediate probation violation sanctions").

Other statutes, however, refer to the imposition of a term of incarceration upon revocation of probation as a "sentence." *See, e.g.*, ORS 137.010(7) (stating that, "when a suspended sentence or sentence of probation is revoked, the court shall impose the following sentence"); ORS 137.712(5) (stating that, if a person subject to a mandatory minimum sentence is placed on probation under that statute and then violates probation by committing a new crime, the court "shall revoke the probation and impose the presumptive sentence of imprisonment" under the rules of the Oregon Criminal Justice Commission); ORS 161.585(2)(c) (stating that certain crimes will be treated as felonies unless, upon revocation of probation, "the court imposes a sentence of imprisonment other than to the legal and physical custody of the Department of Corrections"). In addition, imposing a term of incarceration after revoking probation is appealable under ORS 138.035, because "sentence" is defined in ORS 138.005(5)(b) to include "imposition or execution of *a sentence* upon revocation of probation[.]" (Emphasis added.)

Similarly, the sentencing guidelines rules also use both terms in describing the consequences of a probation

_____

[2] Context includes other provisions of the same statute and other related statutes. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

revocation. For example, OAR 213-012-0040(2) repeatedly refers to "the sentencing judge" but also uses the term "sanctions" to refer to the consequences of a probation violation.[3] OAR 213-010-0002 repeatedly refers to incarceration upon revocation of probation as a "sentence."[4]

Because the statutes and the sentencing guidelines rules use the terms "sanction" and "sentence" interchangeably to describe the consequences of revoking probation, those statutes and rules do not clearly define two distinct pathways to imprisonment.

We said as much in *State v. Lane*, 357 Or 619, 355 P3d 914 (2015). There, we examined the historical context of Article I, section 44, of the Oregon Constitution. That examination included the statutes and regulations that existed in 1999, when Article I, section 44, was adopted by the voters after a legislative referral. *Id.* at 627. The defendant argued that those statutes and regulations revealed an unambiguous distinction between imposing a sentence for a crime and imposing a sanction upon probation revocation. But we did not "find such a clear distinction in the relevant statutes and

---

[3]  OAR 213-012-0040(2) provides:

"(2) When an offender is serving multiple terms of probationary supervision, *the sentencing judge* may impose *revocation sanctions* for supervision violations as provided by OAR 213-010-0002 for the violation of each separate term of probationary supervision.

"(a) If more than one term of probationary supervision is revoked for a single supervision violation, *the sentencing judge* shall impose the *incarceration sanctions* concurrently.

"(b) If more than one term of probationary supervision is revoked for separate supervision violations, *the sentencing judge* may impose the *incarceration sanctions* concurrently or consecutively."

(Emphases added.)

[4]  OAR 213-010-0002 provides, in part:

"(1) For those offenders whose presumptive sentence was probation, the *sentence upon revocation* shall be to the supervisory authority for a term up to a maximum of six months.

"(2) For those offenders whose probationary sentence was either a departure from a presumptive prison sentence or a sentence imposed pursuant to OAR 213-005-0006, the *sentence upon revocation* shall be a prison term up to the maximum presumptive prison term which could have been imposed initially, if the presumptive prison term exceeds 12 months. For those presumptive prison terms 12 months or less, the *sentence upon revocation* shall be to the supervisory authority, up to the maximum presumptive prison term."

(Emphases added.)

regulations[.]" *Id.* at 628. Instead, we noted that "a number of statutes describe the penalties for a probation violation as a 'sanction[,]'" *id.*, but "other statutes and rules \*\*\* refer to the imposition of a sanction for probation violations as 'sentencing[,]'" *id.* at 629. Thus, we thought that the voters who adopted Article I, section 44(1)(b), would not have understood that there was "a well-established and 'unambiguous' distinction between imposing probation revocation sanctions and sentencing." *Id.* at 631.

Additional context supports the conclusion that ORS 137.123 applies to a sentence of imprisonment imposed upon revocation of probation. ORS 137.123 was enacted by initiative in 1986 as part of Ballot Measure 10 (1986), known as the "Crime Victims' Bill of Rights." Or Laws 1987, ch 2, § 1; *see State v. Soto*, 372 Or 561, 584-85, 551 P3d 893 (2024) (describing enactment history). That was three years before the Oregon legislature "substantially changed the way courts sentenced felony offenders." *State ex rel Engweiler v. Cook*, 340 Or 373, 380, 133 P3d 904 (2006) (citing Or Laws 1989, ch 790). The 1989 legislation "abolished Oregon's indeterminate sentencing system" and replaced it with the current sentencing guidelines scheme. *Engweiler v. Board of Parole*, 343 Or 536, 540, 175 P3d 408 (2007).

Under the indeterminate sentencing system that existed when ORS 137.123 was enacted, there was no such thing as a "sentence" of probation. At that time, a trial court had two options if it wanted to place a convicted felon on probation: (1) It could sentence the defendant to a term of imprisonment and suspend execution of that sentence during the term of probation; or (2) it could "suspend the imposition of a sentence and sentence [the defendant] at a later date if probation [was] violated." *State v. Stevens*, 253 Or 563, 565, 456 P2d 494 (1969); *see also State v. Carmickle*, 307 Or 1, 7-10, 762 P2d 290 (1988) (describing the history of probation in Oregon); *State v. McClure*, 295 Or 732, 736, 670 P2d 1009 (1983) (stating that probation was "an alternative to the imposition of a sentence"); *State v. Ludwig*, 218 Or 483, 486-87, 344 P2d 764 (1959) (stating that "[p]robation is a release by the court before sentence has commenced").

Thus, the term of imprisonment imposed upon revocation of probation *was* the sentence.

In 1985—one year before the voters enacted ORS 137.123—the legislature enacted *former* ORS 137.122 (1985).[5] Or Laws 1985, ch 722, § 2. That law provided that, if the defendant had been previously sentenced to a term of imprisonment by another court, "the court may impose a term of imprisonment concurrent with or consecutive to" the previous term of imprisonment. *Former* ORS 137.122(2) (1985). Because that statute applied when a court imposed "a term of imprisonment"—not a "sentence"—it authorized a court to impose a term of imprisonment upon revocation of probation that was consecutive to a previously imposed term of imprisonment.[6]

Thus, in 1986, when the voters expressly authorized consecutive "sentences" by adopting ORS 137.123, courts were already authorized under *former* ORS 137.122(2) (1985) to impose upon revocation of probation a term of imprisonment that was consecutive to a term of imprisonment that had been previously imposed by another court. It would seem to follow that the voters in 1986 likely intended "sentence" as used in Measure 10 to include a term of imprisonment imposed upon revocation of probation. Granted, we stated in *Soto* that, "even assuming that voters in 1986 may have been generally aware that the legislature had recently enacted a consecutive sentence statute, *former* ORS 137.122 (1985), we cannot infer that the voters intended [Measure 10] to have the same meaning" as that statute. 372 Or at 586-87. Accordingly, *former* ORS 137.122 (1985) provides

---

[5] The legislature repealed ORS 137.122—which was mostly duplicative of ORS 137.123—in 1991. Or Laws 1991, ch 67, § 28.

[6] Before 1961, a statute made consecutive sentences *mandatory* when a defendant was serving a prison sentence at the time of sentencing on a new crime. *See former* ORS 137.160 (1959) ("If the defendant is in imprisonment upon a previous judgment on a conviction for a crime, the judgment shall be that the imprisonment shall commence at the expiration of the term limited by the previous judgment"). That statute was repealed in 1961. Or Laws 1961, ch 520, § 1. From 1961 until 1985, no statute gave courts the authority to impose a sentence that was consecutive to a previously imposed sentence, but this court had indicated that "permissive legislation was not necessary" because "[i]t is an inherent power of the court to impose sentences, including the choice of concurrent or consecutive terms when the occasion demands it." *State v. Jones*, 250 Or 59, 61, 440 P2d 371 (1968).

relevant context, but it does not necessarily indicate that the voters intended Measure 10 to have the same meaning.

Defendant reads more into the legislature's replacement of indeterminate sentencing with the current sentencing guidelines scheme. He contends that, even if ORS 137.123 may have authorized trial courts to impose a consecutive "sentence" upon revocation of probation when the voters enacted that statute in 1986, the legislature's enactment of our current sentencing system in 1989 eliminated that authority. The 1989 legislation included the provision that is now codified in ORS 137.545(5)(b), which provides that "the court that imposed [a] probationary sentence may revoke probation supervision *and impose a sanction as provided by rules of the Oregon Criminal Justice Commission*."[7] (Emphasis added.) Those rules have been approved by the legislature. *See State v. Carlton*, 361 Or 29, 39 n 7, 388 P3d 1093 (2017) (noting that the sentencing guidelines "are administrative rules, of which the legislature has expressed approval, although without formally adopting them as statutes").

According to defendant, under our current system, probation revocation sanctions are now governed exclusively by the sentencing guidelines rules, and those rules do not authorize a trial court to impose upon revocation of probation a term of incarceration that is consecutive to a sentence that had been imposed in another case. That argument fails in both respects. The sentencing guidelines rules are not exclusive; they incorporate existing statutory authority governing consecutive sentences.[8] And, contrary to Justice

---

[7] We discussed the enactment history of ORS 137.545 in *Rusen*. There, we explained that, as originally enacted, the statute *required* trial courts to revoke probation upon finding a violation of the conditions of probation, but the legislature amended the law in 1991 to make revocation discretionary. *Rusen*, 369 Or at 700.

[8] Justice Duncan suggests that a court's authority under ORS 137.545(5) (b) to impose a sanction "as provided by" the sentencing guidelines rules means that ORS 137.123 cannot directly apply. 374 Or at 125 (Duncan, J., concurring). ORS 137.545(5)(b) was enacted in 1989, three years after the voters enacted ORS 137.123, and it did not expressly amend or repeal ORS 137.123. We generally do not treat a statute as implicitly repealing authority previously granted by an existing statute. *See State ex rel Huddleston v. Sawyer*, 324 Or 597, 605, 932 P2d 1145, *cert den*, 522 US 994 (1997) (holding that Measure 11 did not repeal the sentencing guidelines by implication because they "can be harmonized to give effect to both"); *State ex rel. Med. Pear Co. v. Fowler*, 207 Or 182, 195, 295 P2d 167 (1956) ("It is well settled that amendments or repeals by implication are not favored by the courts.").

Duncan's concurrence and as explained next, those rules authorize a trial court to impose upon revocation of probation a term of incarceration that is consecutive to a prior sentence when the original sentence of probation was a departure from a presumptive prison sentence.

OAR 213-010-0002(2) provides that, if the original probationary sentence was a departure from a presumptive prison sentence, "the sentence upon revocation shall be a prison term up to the maximum presumptive prison term which could have been imposed initially[.]" The *Oregon Sentencing Guidelines Implementation Manual* (Guidelines Manual) contains the official commentary to the sentencing guidelines.[9] Oregon Criminal Justice Council, *Oregon Sentencing Guidelines Implementation Manual* (1989). The Guidelines Manual explains the purpose of OAR 213-010-0002(2):

> "This section reflects a policy judgment by the Guidelines Board that *an offender granted probation in lieu of presumptive imprisonment should remain subject to the imprisonment that the court could have imposed as a presumptive sentence under these guidelines.* This sanction policy should encourage probationary sentences in appropriate cases because the sentencing judge retains the authority to impose the more substantial prison term. The policy should also encourage compliance with the conditions of probation because the offender will be aware of the more severe revocation penalty."

*Oregon Sentencing Guidelines Implementation Manual* 170 (1989) (emphasis added). Thus, determining the sentence that could be imposed upon revocation of a probation that was initially imposed as a departure from a presumptive prison sentence requires the court to determine what sentence the court could have imposed, had it not departed to probation.

Whether that sentence could be imposed consecutively to a sentence that the defendant was serving at the

---

[9] As noted, the Guidelines Manual contains the State Sentencing Guidelines Board's "official commentary to each of the rules comprising the guidelines." *State v. Davis*, 315 Or 484, 493 n 14, 847 P2d 834 (1993). We have also explained that the Guidelines Manual is a "training tool" and "reference manual" that "describes for criminal justice professionals the proper application of the guidelines." *Id.* (internal quotation marks omitted).

time is addressed in the sentencing guidelines rule that governs the imposition of consecutive or concurrent sentences. That rule incorporates existing statutory authority, including ORS 137.123, for the imposition of consecutive sentences. OAR 213-012-0010 provides:

> "When multiple convictions have been entered against a single defendant, the sentencing judge may impose consecutive or concurrent sentences as provided by ORS 137.123 and 137.370."[10]

Thus, if consecutive sentences are authorized directly by ORS 137.123, they should also be authorized indirectly through the sentencing guidelines rule that incorporates that statute. And nothing in the sentencing guidelines rules *precludes* a court from imposing a consecutive term of incarceration in situations that are covered by ORS 137.123.

The Guidelines Manual confirms that the sentencing guidelines rules were never intended "to limit the court's discretion to impose concurrent or consecutive sentences" in situations covered by the statute. *Oregon Sentencing Guidelines Implementation Manual* 112 (1989). Instead, the Guidelines Manual recognizes that the court's discretion to impose concurrent or consecutive sentences "is granted to the judiciary by statute." *Id.* (citing *former* ORS 137.122 (1985) and ORS 137.123).

Rather than limiting that discretion, "the sentencing guidelines prescribe the manner in which multiple sentences are to be computed." *Id.* In describing the intent of *former* OAR 253-12-010 (1989) (now OAR 213-012-0010)[11]—

---

[10] ORS 137.370(5) provides:

> "Unless the court expressly orders otherwise, a term of imprisonment shall be concurrent with that portion of any sentence previously imposed that remains unexpired at the time the court imposes sentence."

Under that provision, the term of imprisonment imposed by the Lake County court upon revocation of defendant's probation in this case "shall be concurrent" with the remaining unexpired term of the Jefferson County sentence, "unless the court expressly orders otherwise." It is undisputed that the Lake County court here "expressly order[ed] otherwise" by imposing a sentence that was consecutive to the remaining term of the Jefferson County sentence.

[11] As originally promulgated, *former* OAR 253-12-010 (1989) provided:

> "When multiple convictions have been entered against a single defendant, the sentencing judge may impose consecutive or concurrent sentences as provided by ORS 137.122, 137.123 and 137.370."

the sentencing guidelines rule that addresses concurrent and consecutive sentences—the commentary states that the rule "confirms that existing statutory law controls the sentencing judge's threshold choice of consecutive or concurrent sentences for multiple convictions." *Id.* The commentary then addresses the situation presented in this case: "If the sentencing judge imposes the sentence in the current case consecutively to a remaining sentence from a prior proceeding, [*former*] OAR 253-12-030 [(1989) (now OAR 213-012-0030)] must be consulted for the proper execution of the consecutive sentences." *Id.*

The rule that "must be consulted"—*former* OAR 253-12-030 (1989) (which is now numbered as OAR 213-012-0030)—describes how the length of consecutive sentences is to be computed:

> "When a sentence is imposed consecutively to a sentence imposed in a prior proceeding, the incarceration term of the new sentence is added to the remaining incarceration term of the prior sentence."

OAR 213-012-0030(1).[12] Again, that rule is premised on the understanding that the court—exercising authority conferred by statute—makes the discretionary decision of whether to impose a sentence that will be consecutive to a previously imposed sentence. And, as noted above, the commentary to the rules on concurrent and consecutive sentencing states that "[n]othing in the rules of the State Sentencing Guidelines Board should be read to limit the court's discretion to impose concurrent or consecutive sentences." *Oregon Sentencing Guidelines Implementation Manual* 112 (1989). Thus, contrary to Justice Duncan's suggestion, 374 Or at 120 (Duncan, J., concurring), the sentencing guidelines rules do not need to explicitly refer to existing statutory authority for that authority to apply.

---

That rule was renumbered, and the current rule, OAR 213-012-0010, is identical, except that the reference to the repealed statute, *former* ORS 137.122 (1985), has been deleted.

[12] As applied in this case, OAR 213-012-0030(1) means that the consecutive sentence imposed by the Lake County court would be added to the end of the term of incarceration that had been imposed by the Jefferson County court. The rule itself does not *authorize* the Lake County court to impose a consecutive sentence; it *presumes* that the court could do so, exercising its statutory authority.

In summary, the text of ORS 137.123, read in context, suggests that the statute applies to a court's sentencing decision upon revocation of probation, and as applied here, authorized the Lake County court to impose a term of imprisonment that was consecutive to the Jefferson County sentence that defendant was serving at the time. As discussed next, the history of that statute does not suggest otherwise.

B.   *History of ORS 137.123*

As noted above, ORS 137.123 was adopted by initiative in 1986 as part of Measure 10, known as the "Crime Victims' Bill of Rights." Or Laws 1987, ch 2, § 1. In determining the intended scope of a law adopted through the initiative, our goal is "to discern the intent of the voters who adopted it." *Burke v. Dep't of Land Conservation & Dev.*, 352 Or 428, 433, 290 P3d 790 (2012). The ballot title described the measure as "revis[ing] many criminal laws concerning victims' rights, evidence, sentencing, [and] parole." Official Voters' Pamphlet, General Election, Nov 4, 1986, 49. The issue of consecutive sentencing "received little attention in the voters' pamphlet." *Soto*, 372 Or at 584. As we noted in *Soto*, the ballot title explanation stated that the measure "'[s]ets consecutive sentence rules,'" and the explanation section of the voters' pamphlet stated, without further elaboration, that Measure 10 would "'slightly expand circumstances under which a person * * * may be given consecutive sentences.'" *Id*. (quoting Voters' Pamphlet at 49, 52).

The ballot title, voters' pamphlet statements, and media coverage for Measure 10 generally focused on victims' rights.[13] The few statements that mention sentencing indi-

---

[13] For example, an endorsement from then-Governor Victor Atiyeh stated, "This is your measure if you are among a majority of Oregonians who believe it is time to restore equal rights to crime victims." Voters' Pamphlet at 53. Another supporter, The Committee Against Unfair Trials, stated that Measure 10 was for voters who "believe that the rights of innocent victims should be equal to the rights of persons accused of crimes." *Id*. Opponents primarily focused on the increased costs to the courts and prison system. For example, Oregon Taxpayers for Justice asserted that the measure would require an increase in the number of prison beds, suggesting that at least some of the public understood that the measure would impact sentencing and prison terms. *Id*. at 55.

Media coverage reflected the same attention to victims' rights with little discussion of sentencing. An endorsement from the editorial board of *The Oregonian* stated that the measure was "a sensible proposal that moves toward correcting a perceived imbalance in the [criminal justice] system[.]" *Time to help victims*, 136

cated that the measure expanded courts' authority to impose consecutive sentences without specifically addressing sentences imposed upon revocation of probation. Because courts already had authority under *former* ORS 137.122 (1985) to impose a term of imprisonment upon revocation of probation that was consecutive to another sentence as explained above, it seems unlikely that Measure 10—which was intended to *expand* courts' existing authority—would have *restricted* courts' authority to impose consecutive sentences by eliminating the authority they had at that time under *former* ORS 137.122 (1985).

In summary, nothing in the history of ORS 137.123 suggests that it was intended to restrict a court's authority to impose a consecutive term of imprisonment upon revocation of probation. However, this court concluded in *Rusen*, 369 Or 677, that ORS 137.123 does *not* directly authorize consecutive sentences upon revocation of probation. As I will explain next, that conclusion is wrong and should be overruled.

## II.   OVERRULING *RUSEN* IN PART

The issue in *Rusen* was whether a court, upon revoking multiple terms of probation based upon a single violation, could impose terms of imprisonment that were consecutive to each other. The defendant contended that consecutive sentences were precluded by a sentencing guidelines rule, OAR 213-012-0040(2), that required concurrent sentences in that situation. The state argued in response that that rule conflicted with a different rule—OAR 213-012-0010—that expressly incorporated ORS 137.123, and thus, authorized consecutive sentences. On review, this court first addressed a "threshold issue": whether ORS 138.105(9) precluded appellate review of the consecutive incarceration terms that the trial court had imposed. 369 Or at 695. Much of our opinion on review was devoted to that issue, and we concluded that ORS 138.105(9) "precludes review of a sentencing challenge only when" certain conditions are met. *Id.* Because those conditions were not

---

Oregonian A1, C6 (Sept 12, 1986). The editorial board highlighted victim-centered provisions in the measure, including "giv[ing] crime victims more of a formal role in court procedures, protecting them from pretrial contact by defendants, allowing them to watch trials even if called as witnesses, [and] letting them comment at sentencing and parole hearings[.]" *Id.*

present in *Rusen*, we concluded that ORS 138.105(9) did not bar appellate review in that case. 369 Or at 695-96.

Turning to the merits, we attempted to "harmonize" the two conflicting rules, concluding that OAR 213-012-0010 (with its incorporation of ORS 137.123) and OAR 213-012-0040(2) "should be understood as addressing different stages of sentencing: the former rule applies to initial sentencing immediately following the convictions, while the latter rule refers to probation revocation proceedings." 369 Or at 703.[14] Accordingly, we rejected the state's argument that the trial court's imposition of consecutive probation revocation sanctions was authorized by OAR 213-012-0010 (with its incorporation of ORS 137.123). 369 Or at 704.

In attempting to harmonize the two conflicting rules, this court also rejected—in a footnote—the state's argument that "sentences" as used in ORS 137.123(2) should be interpreted to include probation revocation sanctions, as we had interpreted the term "sentences" in Article I, section 44(1)(b), in *Lane*, and that, if interpreted that way, then ORS 137.123(2) itself would *directly* authorize the trial court to impose consecutive sentences upon revocation of probation. *Rusen*, 369 Or at 698 n 8. We concluded in that footnote that, "to the extent that ORS 137.123(2) applies at all, it would apply only through OAR 213-012-0010." *Id*.

The conclusion that ORS 137.123 does not directly apply upon revocation of probation is wrong and should be overruled. As discussed above, the text, context, and history of ORS 137.123 all demonstrate that that statute *directly* authorizes trial courts to impose consecutive sentences upon revocation of probation in some circumstances, and thus, that statute does not apply "*only* through OAR 213-012-0010." *Id*. (Emphasis added.) The contrary conclusion in *Rusen* is wrong.

---

[14] In my view, a better way to "harmonize" the two conflicting rules in *Rusen* would have been to recognize that the rule cited by the state—OAR 213-012-0010—is a general rule that applies to all sentences, while the rule cited by the defendant—OAR 213-012-0040(2)—is a more specific rule that squarely applied to the sentencing issue presented in that case. Those rules could be harmonized by applying the principle that the specific rule controls over the general one. *See* ORS 174.020(2) ("When a general provision and a particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent."); *Kambury v. DaimlerChrysler Corp.*, 334 Or 367, 374, 50 P3d 1163 (2002) (applying principle).

*Rusen*'s misinterpretation is understandable. Because the court was presented with arguments about how to harmonize two conflicting sentencing guidelines rules, *Rusen* did not analyze the text, context, or history of ORS 137.123.[15] Nor did it mention the statements in the Guidelines Manual confirming that a court's discretion to impose concurrent or consecutive sentences "is granted to the judiciary by statute." *Oregon Sentencing Guidelines Implementation Manual* 112 (1989) (citing *former* ORS 137.122 (1985) and ORS 137.123); *see also id.* (stating that OAR 213-012-0010 "confirms that *existing statutory law* controls the sentencing judge's threshold choice of consecutive or concurrent sentences for multiple convictions" (emphasis added)). Thus, *Rusen*'s conclusion that ORS 137.123 does not directly apply upon revocation of probation was more of an offhand rejection of an alternative argument offered by the state than a full-blown analysis of the intended scope of ORS 137.123.

As explained above, analyzing the text, context, and history of ORS 137.123 reveals that that statute directly authorizes a court to impose, upon revocation of probation, a sentence of imprisonment that is consecutive to a sentence that the defendant is serving at the time of revocation. Although a sentencing guidelines rule precluded consecutive sentences in *Rusen*, that rule could not deprive the court of authority granted by statute. *Id.* ("While the guidelines have been approved by the legislature, they retain their status as administrative rules. When those rules conflict with statutes, the statutory provisions control"); *Fisher Broad., Inc. v. Dep't of Rev.*, 321 Or 341, 355, 898 P2d 1333 (1995) (legislative choice under statute cannot be overruled by department regulation); *Univ. of Or. Coop. Store v. Dep't of Rev.*, 273 Or 539, 550, 542 P2d 900 (1975) ("[A]n administrative agency may not, by its rules, amend, alter, enlarge or limit the terms of a legislative enactment."). Accordingly, the

---

[15] Justice Duncan suggests that *Rusen*'s holding that ORS 137.123 does not apply upon revocation of probation was "fully considered" because the court considered the text, context, and legislative history of a different statute, ORS 137.545(5)(b). 374 Or at 126 (Duncan, J., concurring). But the court's analysis of text, context, and legislative history of one statute is not also a full consideration of the text, context, and history of a different statute enacted three years earlier.

second holding in *Rusen*—that consecutive sentences were not authorized in that case by statute—should be overruled.

In conclusion, I would decide this case on statutory grounds and hold that, upon revoking defendant's probation, the Lake County court had authority under ORS 137.123 to impose a term of imprisonment that was consecutive to the Jefferson County prison sentence that defendant was serving at the time. In so doing, I would overrule the conclusion in *Rusen*, 369 Or at 698 n 8, that ORS 137.123 does not directly authorize consecutive sentences upon revocation of probation.

Because I fully agree with the majority opinion's disposition of this case and its analysis of Article I, section 44, I respectfully concur.

James, J., and Masih, J., join in this concurring opinion.